LARNED *v.* WENTWORTH *et al.*

1. When by the terms of a written contract an option to purchase, within a stated time, lands at a named price is given to another for a valuable consideration, the performance of or offer to perform the conditions stated, within the time limited, is necessary to entitle the party to whom the option is given to the right to demand a conveyance of the land; no rights thereunder will accrue by an offer to perform after the time limited has expired.

2. To be effective, the acceptance and performance of the conditions named must be absolute and unconditional. Notice given, within the time, that the conditions are accepted, and the payment of a nominal sum as earnest money to an agent not authorized to change the terms of the contract, under an agreement with him that the title shall be examined and if found good the entire purchase-money shall be then paid, is not, when these things fall short of compliance with such conditions, such an acceptance as will authorize a decree for a specific performance of the contract.

3. An agent who is authorized by the owner to give to a prospective buyer an option to purchase described land at a given price, if exercised within a named time, has no implied authority to consent to a conditional acceptance of the terms of the option, to be performed after the time limit has expired.

4. The acceptance of the terms of the option under the evidence in this case was not unconditionally made within the limit of the time expressed in the written contract of option, and therefore performance could not properly have been decreed. It follows that the grant of injunction, to restrain the owner from changing the status of the title to the land pending litigation, was erroneous.

Argued June 11,—Decided November 8, 1901.

Injunction. Before Judge Brinson. Richmond superior court. April 24, 1901.

*Joseph R. Lamar*, for plaintiff in error: The receipt for ten dollars was not a contract: Civil Code, § 5208; 92 *Ga.* 149; 57 Am. R. 860. If it was a contract it was not the contract of Larned; it is signed "Clarence E. Clark, Agent for Charles Larned," and was Clark's contract: 51 *Ga.* 482; 91 *Ga.* 748; 101 *Ga.* 676; 109 *Ga.* 287; 110 *Ga.* 283. Clark had no authority to make a contract of sale which would bind his principal: 111 *Ga.* 490; 6 Am. Rep. 617; Mechem, Agency, § 966; 4 Am. & Eng. Enc. L. (2d ed.) 964. The renewal option, being in parol and without consideration, was void: 104 *Ga.* 162; 68 Md. 21; 10 Mont. 5, s. c. 24 Pac. 695; 33 Am. Dec. 681; 21 L. R. A. 129; 28 Am. & Eng. Enc. L. (1st ed.) 91; Pomeroy, Cont. § 92. Even if in writing, it could only be treated as an offer which could be withdrawn at any time before unconditional acceptance: 81 *Ga.* 707; Pomeroy, Cont. § 64, and cit. Acceptance must be unconditional; the acceptance here was conditional: 1 Beach, Cont. 52–4; 28 Am. & Eng. Enc. L. (1st ed.) 92, n. 2; 95 *Ga.* 518; 81 *Ga.* 704; 31 W. Va. 736; 40 Kan. 418; 41 Kan. 37; 36 Minn. 361; 7 Ontario, 182; 3 L. R. A. 95 (3); 117 Ill. 118, s. c. 57 Am. Rep. 858; 67 Iowa, 678, s. c. 56 Am. Rep. 371. The option being silent as to credit, the presumption is that the sale was for cash; and in order to bind the seller the transaction would have to be completed within the time prescribed:

88 *Ga.* 325. Cash means absolute payment at the time the other party acts: 46 *Ga.* 280. In order to recover, the vendee must allege and prove an offer to perform by tender of the purchase-money. He ought also to show that he tendered a sufficient deed for the vendor to sign, which he refused to do: 88 *Ga.* 327; Pomeroy, Cont. §§ 360–62. Proof that the offer was withdrawn before notice of absolute acceptance, and before tendering the cash or a deed for signature, is a complete defense in an action for specific performance: *Peacock* v. *Deweese,* 73 *Ga.* 570, cited in 21 L. R. A. 132; Pomeroy, Cont. § 66. Where a writing is silent as to certain terms which can be supplied by implication of law, such silence may not prevent the writing from being a perfect contract; but if the writing is silent and the parties orally agreed as to the terms which are omitted, the contract is void, under the statute of frauds: 100 *Ga.* 645; 82 Mo. 215, s. c. 52 Am. Rep. 365. A defendant may even admit the contract and obtain the benefit of the statute of frauds: 8 *Ga.* 457. The payment of ten dollars did not give the agreement validity; part payment unaccompanied with possession would only authorize a recovery of the sum paid: Code, § 4037; 15 *Ga.* 445 (4); 57 Am. Rep. 860, 862; Pomeroy, Cont. § 112. There was no ratification by Larned; he was without knowledge of all the material facts at the time he sent the telegrams and letters which it is claimed amounted to a ratification: 12 *Ga.* 205 (2); 82 *Ga.* 688 (4); Mechem, Ag. 128, 129, 148; 1 Am. & Eng. Enc. L. (2d ed.) 1181 et seq. There was no unreasonable silence: 14 *Ga.* 124; 32 *Ga.* 72; 53 *Ga.* 144, 315. To claim the benefit of ratification, the other party must have acted on the ratifying act to his own damage: 11 N. J. Eq. 201. The receipt was the personal contract of Clark, and only a subsequent adoption of it, or the making of a similar contract by Larned, could give it validity: 81 *Ga.* 176 (7), 186. Ratification would not prevent withdrawal by Larned prior to unconditional acceptance of the offer: 44 Pa. St. 17. Filing a petition for specific performance did not cure want of mutuality: Pomeroy, Cont. § 158. See further, as to specific performance: 21 L. R. A. 130; 10 Wall. 340; 14 Peters, 77, 83; 4 Wheat. 225; 4 Wall. 513; Civil Code, § 4037. In order to obtain specific performance, the terms of the contract should be so precise that neither party can reasonably misunderstand it: 2 Wheat. 336. In the receipt for ten dollars "earnest money on account of Tuckahoe"

there is no proper identification of the subject-matter. Earnest money suggests personalty rather than realty (Civil Code, § 2693, par. 7), and "Tuckahoe" might equally well have referred to a race-horse or a yacht: 33 Pa. St. 411; 45 Kan. 231; 95 U. S. 200; 5 Jones Eq. (N. C.), 153; 46 Ind. 426; 46 Pa. St. 334; 1 Humph. 325; 6 B. Mon. 103; 3 Littell, 262; 20 W. Va. 415. No right to injunction: 13 N. J. Eq. 320.

*Samuel F. Garlington,* contra: Apparently Clark was the agent of Larned, for he acted and signed as such: Code, §§ 3022,3026, 3024; 39 *Ga.* 35; 70 *Ga.* 595; 75 *Ga.* 289; 78 *Ga.* 312. Really agent: Code, §§ 3021, 3023, 3027, 2997, 2999; 16 *Ga.* 424; 67 *Ga.* 595; 99 *Ga.* 151; 100 *Ga.* 737; 110 *Ga.* 302; Id. 403, 413; 98 Mass. 105; Lawson, Cont. §§ 169–173; 5 Wait, Act. & Def. 821; 8 Am. & Eng. Enc. L. (1st ed.) 718–19. Ratification: Code, §§ 3019,3021; 105 *Ga.* 418. The general principles of agency are universal, and apply to those dealing with either real or personal property: 28 Am. & Eng. Enc. L. (1st ed.) 94. Where agent has authority to sell, he has authority to sign an agreement in the principal's name and bind him thereby: Civil Code, §§ 3019, 3021; 67 *Ga.* 595; 86 Mo. 178; 40 N. Y. 363. Larned will not be permitted to set up reasons other than that originally given for his refusal to consummate the sale: 100 *Ga.* 566; 25 Am. & Eng. Enc. L. (1st ed.) 916; 28 Id. 582. Contract by agent not being under seal, agent presumed to have the authority, as verbal authority would be sufficient, and ratification need not be under seal: 39 *Ga.* 35; 60 *Ga.* 212; 67 *Ga.* 595 (3b). Otherwise as to contract under seal: 102 *Ga.* 751, and citations. No part of the contract is sealed: 69 *Ga.* 763; 112 *Ga.* 700. The question of agency is one finally for a jury. The petition sets forth the option — a simple contract, for a valuable consideration; an assignment of it by proper writing; an extension by proper writing; an acceptance by proper writing; a payment thereunder as "earnest money"; and a ratification. These are on separate papers: 73 *Ga.* 400; 8 Am. & Eng. Enc. L. (1st ed.) 711, 724. Extension shows continuing offer to sell: 10 Mont. 5. Consideration for extension: 21 L. R. A. 129, notes; 5 *Ga.* 476; 12 *Ga.* 52; 68 *Ga.* 141; 104 *Ga.* 163, and citations; Civil Code, §§ 3657, 3659. Right to assign: 35 *Ga.* 258; 103 *Ga.* 134; 104 *Ga.* 164; 21 L. R. A. 133, note III; 21 *Ga.* 183. Receipt shows acceptance, as do letters and telegrams. Not essential that

the letters should be addressed by one of the parties to the other: 37 Kan. 487; 7 N. Y. Supp. 21; 32 Gratt. (Va.) 645; 22 Am. & Eng. Enc. L. (1st ed.) 976. Specific performance: Civil Code, §4036; 22 Am. & Eng. Enc. L. (1st ed.) 909, 910, 921; Waterman, Sp. Perf. § 1; Anderson, L. Dict. 766; 1 Sneed (Tenn.), 1; 85 Tenn. 707; 86 Tenn. 663; 33 S. C. 367; 27 Wis. 671; 8 Am. & Eng. Enc. L. (1st ed.) 724. Terms fair and just; no inadequacy of price. Bad trade even would not avail Larned, there being no fraud: 37 S. E. Rep. (N. C.) 141. Equity looks to intent rather than form: 22 Am. & Eng. Enc. L. 923, 941, note; 1 Peters, 650; Fetter, Eq. 266; 6 Leigh, 175, s. c. 29 Am. Dec. 208. Injunction: Civil Code, §§ 4924, 4913; Fetter, Eq. 290, 294; 111 Ga. 395. Unilateral contracts: 103 Ga. 134, and citations. Signature of party to be charged, or his agent, sufficient; not essential that the other party sign: 22 Am. Eng Enc. L. (1st ed.) 978, note; 70 Ga. 198; 82 Ga. 128; 104 Ga. 164; 111 Ga. 455; 33 Fed. Rep. 530; 80 Ala. 360; 79 Ala. 180; 10 Mont. 5. Bringing suit makes remedy mutual: 4 R. I. 25, s. c. 67 Am. Dec. 500; 1 L. R. A. 380; 59 Ill. 298; 28 S. E. Rep. 175; 36 S. E. Rep. 992; 23 N. J. Eq. 536; 35 Md. 352; 56 Fed. Rep. 1; 81 N. W. Rep. 247; 14 S. E. Rep. 255; 10 Nev. 355; 18 N. J. Eq. 126; 90 Am. Dec. 613; 75 Pa. St. 483; 27 N. W. Rep. 176; 45 N. J. Eq. 95. Larned did not withdraw until after the minds of the parties had met in closing the trade, and after he had ratified. The parol was not in reference to the sale, but related to the manner of delivery: 97 Ga. 567. Agent to sell has the right to prescribe manner of delivery: Civil Code, § 3023; 67 Ga. 595, 598; 110 Ga. 382; 111 Ga. 876. Cash means on delivery, not in advance: Anderson, Law Dict. 154; 8 Vt. 255. Sometimes 30 days after delivery: 3 Mo. App. 142. On sale of land, in the absence of express agreement, payment of purchase-money and delivery of title deed are concurrent acts: 88 Ga. 327. Sale was made when Wentworths accepted offer; it was then Larned's duty to deliver: 67 Ga. 595, and cit. Wentworths were always ready: 46 Ga. 278; 28 Am. Eng. Enc. L. (1st ed.) 92, 93, and cit. The term "Tuckahoe" describes a tract of land definitely. Description by metes and bounds not necessary when thing well known by name: 20 S. E. Rep. (Va.) 831; 12 Ga. 431; 110 Ga. 163; Id. 359; 88 N. C. 293; 147 Mass. 304; 7 Jones (N. C.), 609, s. c. 78 Am. Dec. 267; 2 Ired. (N. C.) 457; 27 S. E. Rep. (W. Va.)

268; 175 Ill. 328; 51 N. E. Rep. 580; 20 N. J. Eq. 316; 16 S. E. Rep. 274; 114 Ill. 388, s. c. 55 Am. Rep. 871; 15 Pac. Rep. (Kan.) 536; 75 Ala. 285; 83 Mo. 152; 8 Am. & Eng. Enc. L. (1st ed.) 724–5. Identification a question for a jury: 81 *Ga.* 260; 83 *Ga.* 645; 101 *Ga.* 160; 120 Cal. 311; 49 Pac. 563; affirmed 52 Pac. 586; Fetter, Eq. 277, and citations; 92 Ind. 560; 98 Mass. 545, s. c. 96 Am. Dec. 671; 58 Conn. 12; 90 Ala. 454. Less certainty required in contract to convey than in deed: 28 Am. & Eng. Enc. L. (1st ed.) 98; 36 N. E. Rep. 836. Sufficiency of letters and telegrams: Civil Code, §§ 3034, 5192; 110 *Ga.* 302, and citations supra. The option renewal receipt contains all the requisites, to wit, parties, subject-matter, price, and consent of parties to all necessary terms. All this is in writing: Civil Code, §§ 5202, 3675; 73 *Ga.* 400; 80 *Ga.* 572; 112 *Ga.* 359. 110 *Ga.* 159, easily distinguished. Specific performance granted more readily for vendee than for vendor: 5 Wait, Ac. & Def. 816 and cit.; 22 Am. & Eng. Enc. L. (1st ed.) 942. Statute of frauds should not be used as an instrument of fraud: 5 Wait, Ac. & Def. 797–8. Not essential that the number of acres specified in the tract should be there; purchase was in solido: Civil Code, §§ 4041, 4042; 111 *Ga.* 346; 106 *Ga.* 193; 78 *Ga.* 618; 22 Am. & Eng. Enc. L. (1st ed.) 943. 111 *Ga.* 490, is distinguishable, and 81 *Ga.* 708, and 100 *Ga.* 651, are not in point.

LITTLE, J. J. and G. K. Wentworth filed a petition in Richmond superior court against Charles Larned and Clarence E. Clark, seeking to compel Larned to specifically perform an alleged contract for the sale of certain land; and, ancillary to the relief sought, they prayed for an injunction against Larned, restraining him from changing the status of the title to the land. No relief was prayed against Clark. On the hearing of the application an injunction was granted, and Larned excepted. Substantially, the facts relied on to authorize the injunction were these: Prior to January 1, 1900, Larned, a resident of Boston, secured the services of Clark, a real estate agent at Augusta, Georgia, to negotiate a sale of "Tuckahoe Plantation" (which is fully described), in Screven county, Georgia, at the price of $9,000. On January 1, 1900, Clark wrote Larned as follows: " I think at last I have found you a purchaser for 'Tuckahoe.' My party wants an option for sixty days at eight thousand dollars cash. As you well know, I do not want

to tie up your lands with an option unless there is a good chance to sell. Please let me have it promptly, and I will do all in my power to make the sale." To which Larned replied on January 3: "Referring to yours of the first, I beg to call your attention again to my letter of April 10th last, where I made you a price of $9,-000.00 cash. I have made the price no less to any party since that time. To give an option to any one, at that price even, would necessitate to withdraw it from sale (for the time I gave an option) with others with whom it is listed with, which I could not do." In a letter of Clark to Larned, January 6, acknowledging receipt of this letter, Clark said: "It is impossible for you to ever sell your land without giving an option. . . Now, I would suggest, if you want to sell your place, to give me an option at $9,000.00 for thirty days, with the understanding that my man is to go or send some one at once. If my man concludes he will not give $9,000.00, I will write you, and then you can withdraw it if you wish. . . If you decide to give me this option, let me hear from you at once." Replying to this on January 8, Larned wrote Clark that he would do for him what he had done for no one else, and would give him an option for thirty days, price $9,000.00, allowing him a commission of five per cent. On January 22, Clark wrote Larned : "I have just received a letter from my party. He says an option of thirty days is long enough, but he is afraid he can not go to look at it until February 1st. He wants an option at $9,000.00 until March 1st. I think this is fair; and if you conclude to let me have it, wire me at my expense." To which Larned replied by telegram dated January 24: "Yours of 22 received. March first will be right." On January 27, Clark, acting under the authority thus given by Larned, entered into a contract in writing with Dunham, as follows: "State of Georgia, Richmond County. This agreement made and entered into this the 27th day of January, 1900, between Charles Larned of the first part and C. E. Dunham of the second part, witnesseth that the said party of the first part, for and in consideration of the sum of $1.00 to him in hand well and truly paid by said party of the second part at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, does agree and does hereby give to the said party of the second part an option upon the purchase of a tract of land in Screven county, Georgia, containing five thousand, two hundred, and fifty

acres, more or less, known as 'Tuckahoe,' the price at which said party of the first part hereby agrees to sell said land being nine thousand dollars. It is hereby agreed and distinctly understood that this option shall expire at noon 75th meridian time March 1st, 1900. In witness whereof the said party of the first part has caused these presents to be duly signed at Augusta, Ga., by his duly authorized agent at Augusta, Georgia, this 27th day of January, 1900. [Signed] Chas. Larned by Clarence E. Clark, agent at Augusta, Ga." This option was duly witnessed, and was by Dunham transferred and assigned in writing for value received to J. and G. K. Wentworth. Clark, at the time the option was given, was aware that Dunham was acting for other parties.

On February 17, Clark wrote Larned as follows: "For the last four or five days the Savannah river has been at its very highest. Tuckahoe has been almost under water and it has been impossible for my man to look it over. He has just called on me and asked me to have his option extended for thirty days. . . If you conclude to do this, wire me at my expense on receipt of this letter." This request for extension was made at the instance of Dunham, representing the Messrs. Wentworth. On February 20, Clark again wrote Larned, stating that he had not heard from his letter of the 17th; that his man had been to Tuckahoe, but, on account of high water, could not see it, and had come to Augusta on Saturday (the date of the former letter) and asked to have the option extended; that he had left for a point near Tuckahoe, and he (Clark) was to wire him that day (January 20) if he heard from Larned; and begging Larned to grant the extension. On February 23, Larned wired Clark: "Will extend option to March 15th. Will write," and on the same day Larned wrote Clark explaining the cause of delay in answering. On February 23, 1900, Clark exhibited to Dunham Larned's telegram agreeing to extend the option. Acting on this, plaintiffs had the land examined, and decided to purchase. On March 13, Clark wired Larned: "My party offers eight thousand cash for Tuckahoe. Answer by wire." To this telegram no answer seems to have been received. On March 14, George K. Wentworth, accompanied by Lloyd J. Wentworth and Dunham, went to Clark's office in Augusta and told him that Larned's offer of sale of Tuckahoe at $9,000 was accepted by the petitioners in this case. and asked Clark, as Larned's agent, to name the amount of cash to

bind the trade, and Clark named $10, which was then and there paid to Clark by George K. Wentworth, and the following receipt given to him by Clark : "Augusta, Ga., March 14, 1900. Received from J. & G. K. Wentworth ten dollars earnest money account of Tuckahoe, balance due $8,990.00. Amount of purchase, $9,000.00. [Signed] Clarence E. Clark, Agent for Charles Larned." A plat of the land was shown petitioners, and it was then understood and agreed that Larned would at once forward papers through his agent, Clark, that an abstract of title of the land could be made and delivered by Clark to petitioners' attorney, whom petitioners instructed in Clark's presence to proceed at once to Sylvania and examine the title of the land ; and the purchasers there and then stated through J. K. Wentworth to Clark that, as soon as the examination was made and the title found to be good, Larned should sign a proper deed conveying the property to the Wentworths, and attach the deed to a draft on the Wentworths for the balance of the purchase-money, and deposit the same in some bank with instructions to the bank to forward the same to some bank in Bay City, Michigan, Wentworth's place of business, to be delivered to the purchasers when they should pay the draft. Clark agreed to this arrangement and said that it was perfectly satisfactory to him, and wired Larned on the same day : "Party accepts option. Nine thousand cash. Tuckahoe. Earnest money paid. Send all papers;" and on the next day (March 15), wrote Larned : " . . Yesterday I wired you, 'Party accepts option, nine thousand cash for Tuckahoe. Earnest money paid. Send papers.' He is ready to pay me the cash as soon as I can deliver the deed. Awaiting your papers and trusting will be satisfactory to you, I am yours very truly, Clarence E. Clark."

In reply to Clark's telegram informing him of the acceptance of the option, Larned wrote to Clark on March 15 : " Your telegram received, reporting sale of 'Tuckahoe' $9,000.00 cash. I am glad you have made the sale. As requested, I send you by registered mail the abstract and seven separate papers for title." Later on the same day Larned wrote further as follows: " Since writing you this morning it has occurred to me to ask how much money the purchaser has put up as part of the purchase-money ? I suppose the full amount (as is the usual custom) will be paid on or within ten days from date." On March 16, and prior to the receipt by Clark of Larned's letter of the 15th, Larned wired Clark : " Sent papers

yesterday. Please do nothing until you receive my letter of this date," and on the same date, and in pursuance of the same purpose, Larned wrote Clark the following letter: "I wrote you yesterday, and sent papers as requested. Since then I have seen and had a talk with my man, who went recently to look over and report to me on my Tuckahoe place. He thinks I ought not to have sold, and I have come to the same conclusion myself; and all this happened by giving an option, as you know, against my own wish. Now, Mr. Clark, you are my agent, and you are expected to do all you can for your and my interest. If the sale is consummated, you get your commission as agreed. You have worked hard for years to sell this place; and if the sale does not go through, I will pay you your commission of $450.00 the same, and in addition to that I will give you $1,000.00 besides, making in all $1,450. I wired you to-day to do nothing until you received letter from me this, March 16th, date. Should I give your party a deed, it would of course be all the law requires, a quitclaim deed. Now you know the whole situation, and I put myself in your hands to do the best you can, and as you would wish me to do by you under like circumstances. Should you have any doubt about getting the money as above, I will send it to you beforehand, if you tell me you can do what I have herein expressed. Please do not for a moment think that I ask you to do anything dishonorable." Clark delivered to Wentworth's attorney the first letter written by Larned on the 15th, and, under the impression that Larned's telegram of the 16th referred to his second letter of the 15th, delivered the abstract and papers also to Wentworth's attorney. On March 19, Clark wrote Larned, acknowledging receipt of his letter of the 16th, and stating that he did not see how he could help Larned out; that $10 had been paid to bind the bargain, and the balance was to be deposited with the National Bank of Augusta; that the papers had been turned over to Garlington, the attorney for Wentworth, and, if approved by him, the purchasers would insist on their trade. On March 22, Larned wired Clark: "Send copy of your contract with Dunham when he paid the ten dollars"; and on the same day Clark wrote enclosing copy of the receipt. This letter was received by Larned on March 24, and he at once, the same day, wired Clark: "Will not sell to Wentworths. There is no contract. Return them the ten dollars." Clark at once telegraphed Wentworth the contents

of Larned's telegram, and enclosed his check for ten dollars, which was returned to him by Wentworth with the statement that they had been advised that the contract held good, and that they had instructed their attorney to go ahead and enforce it.

We have from a voluminous record culled the above as the facts which seem to have been established at the hearing, and which are not materially controverted.   Very much other evidence appears; but inasmuch as, in our judgment, the case on its merits turns upon the question whether the Messrs. Wentworth had so properly exercised their right of option as to entitle them to a conveyance of the land, it has not been deemed necessary to make reference in detail to other portions of the evidence.   We have endeavored to arrange (whether successfully or not), in this epitome of the evidence in relation to the action of the parties as to the option and the final contract, the various transactions in chronological order, so that the controlling features of the case may the more readily appear.   A demurrer to the petition was filed by Larned, on a number of grounds; and an amendment was made to the petition, by which the allegation that Larned placed the land in the hands of Clark "to negotiate a sale" was stricken, and an allegation substituted therefor to the effect that Larned placed the land in the hands of Clark to sell for nine thousand dollars, with authority to Clark to make a binding contract of sale by proper writing.   The result of the hearing was the grant of an injunction by the judge in the following terms:   "Without extended discussion . . I think it is established in the case:   First, that C. E. Clark was the agent of the defendant Larned.   Second, that said agent was expressly clothed with authority to grant an option on the sale of a plantation called 'Tuckahoe,' situated in Screven county, as well as with authority to make a contract of sale thereof at the sum of nine thousand ($9,000.00) dollars cash; that said authority also embraced power to collect the purchase-price and to deliver the deed when forwarded by the principal; and that, having this latter power, his agreement as to the particular method of consummating said cash sale would be binding.   Third, that plaintiffs directly and through others had, for a valuable consideration, taken said option, and before its withdrawal had accepted the terms of the purchase. Fourth, that said contract of sale with Clark, the agent of defendant, sufficiently set forth the three elements necessary to constitute

such contract of sale, viz.: the identity of the thing sold, the purchase-price, and the consent of the minds of each as to all necessary terms. Fifth, that said option, the receipt for part of the purchase-money, and the letters and telegrams are sufficient to take this case out of the statute of frauds. For which reasons it should appear that plaintiff is apparently entitled to a decree for specific performance; and it is therefore ordered and adjudged that the injunction prayed for by plaintiffs be granted." To the order granting the injunction Larned excepted, specifically assigning that the granting of the same was error for many reasons, among others: that under the facts petitioners were not entitled to a specific performance of the contract; that the contract was unilateral, wanting in mutuality, and without consideration to support it; that the offer was withdrawn before acceptance; that Clark was not authorized to make a contract of sale, under the evidence; that he had no power to bind his principal by collecting the purchase-money; that under the evidence Clark had no authority to agree on a particular method of consummating the sale, nor to grant an extension of time in which the title might be examined and in which the purchase-money should be paid, nor to agree that the purchase-money should be paid in Michigan; that the agent had no authority to agree that the purchase-price should be paid when it was ascertained that the title was satisfactory, nor that the purchase-money should be paid by a draft; that the court erred in holding that under the evidence the plaintiffs, for a valuable consideration, had taken the option and before its withdrawal had accepted the terms of the purchase; and that the court erred in ruling that the option, the receipt for part of the purchase-money, and the letters and telegrams were sufficient to take the case out of the statute of frauds.

Inasmuch as the result of our consideration of the pleadings and evidence in this case brings us to the conclusion that the plaintiffs would not be entitled thereunder to a decree for a specific performance of the contract which they set out, we deem it entirely unnecessary to consider and pass upon the collateral questions raised and insisted on as reasons why the court erred in granting the injunction; for if the option and the action of the parties thereunder do not make in law a binding contract, it follows that Larned should not be enjoined from making such a disposition of the land as he may see proper. Therefore our consideration of the case will be

confined to the question as to whether the action of the transferees of the written option was in law sufficient to constitute a legal obligation on the part of Larned to convey the land to them. Before determining the rights of the parties under the contract of option, it is essential to determine to what extent Mr. Clark was the agent of Larned in the sale of the property; and just here it is in place to say that we do not understand from the evidence of Mr. Clark that he was the general agent of Larned, nor a special agent possessed of powers in addition to those which are necessarily implied in the correspondence which passed between them, and what occurred in the interview they had. That Clark considered he had full authority as agent to accept an advance on the purchase-money and to agree to the payment of the balance by draft after the time limited in the option, in the event the title was satisfactory, is evident from an inspection of the record. The conduct of Mr. Clark appears to have been perfectly correct towards all of the parties during the different phases of the transaction; but the question as to the extent of his agency, and his powers to bind Larned, must be determined, not from the conclusions which he drew from the correspondence, but from settled rules of law growing out of the relation of principal and agent; and the powers of the agent to act for his principal must be determined by the writings and telegrams which passed between them, because it is not insisted or shown that Clark had any other powers as agent than those conferred by the correspondence, from which it is clearly indicated that he was not originally invested with authority by his principal to give an option, although it is shown that he was originally invested with the power to sell the land for nine thousand dollars cash. Having placed the land in the hands of Clark to sell for him for a named price, the correspondence in relation to giving the option of purchase shows that Clark wrote to his principal that he thought he had found a purchaser for the land, but that his party wanted an option for sixty days. Certainly up to this period of time there is nothing to indicate that the agent was invested with any power to grant an option for the purchase of the land. In the letter applying for the option the agent says: " Please let me have it promptly, and I will do all in my power to make the sale." So far as this record shows, the principal at that time declined to give the option, and the agent subsequently informed his principal that it would be

impossible for him ever to sell his land unless an option was given, and that if his principal would give him an option for thirty days and the prospective purchaser which the agent had in contemplation would not in that time give the named price, the principal could then withdraw it. It was apparently under the influence of this second letter that the principal wrote his agent that he would give him an option for thirty days at the price of nine thousand dollars, allowing him a commission of five per cent.

From the correspondence leading up to the giving of the option three things are well established: first, that Clark had no legal power to give an option for the purchase of Larned's land; second, that Larned gave to Clark directly authority to make for him a contract of option for thirty days at a price of nine thousand dollars; and third, that the terms of the option were cash. Under this authority Clark was authorized to give an option to his prospective purchaser, whoever he might be, to purchase the land within thirty days by the payment of a sum named in cash. But it does not appear that he was authorized in any manner to change the terms of the option; nor does the subsequent correspondence, by which the agent was authorized to enlarge the time in which the right of option could be exercised, enlarge the powers of the agent in any other respect. On January 22, Clark applied to Larned for an extension of the time limit of the option till March 1, which on January 24 Larned granted by telegram. Then by its terms the option expired on March 1, at noon. Subsequently, on the application of Clark for given reasons, Larned extended the same to March 15. So it is apparent that the only result of this correspondence was, that Larned authorized Clark, his agent, to give to a prospective purchaser whom the agent had found, an option to purchase the land for nine thousand dollars cash, which option was to be exercised by March 15. Then, as it does not appear that the agent was authorized by the principal to change or give any other option than the one prescribed by him, the question whether Wentworth exercised his right in such a manner as to entitle him to a conveyance can only be determined by a consideration of the legal incidents which attach to such a contract. It was ruled in the case of *Black* v. *Maddox*, 104 *Ga.* 157, that such contracts, when founded upon a valuable consideration, were legal and binding on the parties; and when performance of the terms of the contract had been made or offered to be made, a specific per-

formance of the contract would be decreed against the party giving the option. The manner of performance which satisfies the terms of a contract of this character is, however, a matter of importance. It was ruled in the case of *Robinson* v. *Weller*, 81 *Ga.* 704, that "the offer of a seller must be accepted by the purchaser, unequivocally, unconditionally, and without variance of any sort." Our present Chief Justice, in delivering the opinion in that case, said: "An absolute acceptance of a proposal, coupled with a condition, will not be a complete contract; because there does not exist the requisite mutual assent to the same thing in the same sense." To the same effect see Potts *v.* Whitehead, 23 N. J. Eq. 512; Sawyer *v.* Brossart, 67 Iowa, 678; Corcoran *v.* White, 117 Ill. 118, in which latter case it was ruled that, "to constitute a contract of sale of land by the acceptance of an offer to sell, the acceptance must be unconditional. No contract would result from a letter, that the party will accept the offer 'provided the title is perfect.'" An option such as that we are now dealing with is purely an offer to sell land, having the binding force of a contract, so that the party offering can not legally withdraw within a time named. It is such an offer as entitles the person to whom it is made to compel the owner to convey the land, if the person to whom it is offered does the prescribed things within the time limit. But when the time has expired, no obligation rests upon the owner afterwards to convey the land. It is peculiarly a contract of which time is of the essence. As was said in *Black* v. *Maddox*, supra, it is a legal contract imposing the obligation to make another contract within a limited period, if named conditions are complied with. The contract, if valid, is nevertheless a conditional one, and its obligations terminate if the condition as to time is not complied with.

For the proposition that the option must be exercised within the time limit, or it will be lost, see Longfellow *v.* Moore, 102 Ill. 289; Mason *v.* Payne, 47 Mo. 517; Carter *v.* Phillips, 144 Mass. 100; Kemp *v.* Humphreys, 13 Ill. 573; Potts *v.* Whitehead, 20 N. J. Eq. 55; Vassault *v.* Edwards, 43 Cal. 458. In the case of Longworth *v.* Mitchell, 26 Ohio St. 334, it is said that a limitation of time for which a standing offer is to run is equivalent to the withdrawal of the offer at the end of the time named. Now it appears in the present case, in reference to the acceptance, that on March 14, the day prior to that on which the option would expire, the defendants

in error informed Clark that Larned's offer for sale of "Tuckahoe" was accepted, and in connection with that information they requested Clark to name the amount of cash to bind the bargain. Clark named ten dollars, and the Messrs. Wentworth paid it and took a receipt. This was not a compliance with the terms of the contract. The contract of option was Larned's contract, and without authority of Larned nothing could be added to or taken from it so as to bind him. The terms of purchase were cash; the payment of ten dollars on account of the purchase was not a compliance with the terms. Not only so, but at the time this advance on the purchase-price was made there was, as appears from the record, a distinct agreement to the effect that Larned should forward his papers, that an abstract of title should be made, which papers were to be delivered by Clark to the attorney for the defendants in error; that this attorney should go to the county in which the land was situated, examine the title, and, as soon as the examination was made and the title found good, that Larned should convey the property to the purchasers, who would pay for the same through a draft drawn on them by Larned through some bank in a named city in Michigan. Here was a new contract, one which could not have been accomplished in the time limit. It makes no difference, as to the legal principle involved, whether, after March 15, Larned was willing to wait ten days for the purchase-money or that he expected it to be paid within that time. There was nothing binding him to wait; he could have done so had he so chosen. The contract, without regard to Larned's willingness or unwillingness to waive any part of its essential terms, must stand on its merits, unless in fact he waived a particular part of its performance or agreed to new conditions. The acceptance on the part of the Messrs. Wentworth was not unconditional. On the contrary, it was conditional; that is, that they would complete the purchase if the title proved to be good. The contrary proposition is embraced in this agreement that they would not complete the purchase under certain conditions; but the legal requirement of the option, in order to give defendants in error any rights thereunder, was that the contract should be completed by the 15th of March. After that day had expired and it remained uncompleted in any essential particular not expressly agreed to by Larned, the Messrs. Wentworth acquired no rights under it. The agreement by the agent annexing other conditions to the perform-

ance of its terms was not expressly given so far as the record shows, and was not embraced by implication in the correspondence, and did not bind Larned.     We must therefore rule that there was no performance of the terms of the contract of option by the Messrs. Wentworth, within the time limit, and that they were not, in the absence of such performance, entitled to a decree for the specific performance of the contract.     Not being so, the granting of the injunction was error.

*Judgment reversed.     All the Justices concurring.*