### 8524. Copeland v. Hancock.

Per Curiam. The only complaint in this bill of exceptions is as to the sufficiency of the evidence to support the verdict. After a careful examination of the record we are of the opinion that the evidence was not sufficient to support the verdict.

*Judgment reversed. Wade, C. J., and George and Luke, JJ., concur.*
Decided July 25, 1917.

Action on contract; from city court of Cairo—Judge Willie. February 12, 1917.

W. J. Hancock sued T. S. Copeland for damages on account of an alleged breach of a contract for an option to purchase certain land, which had been leased by the defendant to the plaintiff for five years beginning October 22, 1910, under a lease containing a provision that the lessee should have the option to buy the land at any time during the period of the lease, at the price of $450. The petition alleged, that in July, 1915, the plaintiff informed the defendant that he was ready to pay this sum and "get his deed" to the land, and was then informed by the defendant that the land had been sold to others, and ascertained that the defendant sold it on January 26, 1915, to F. M. Brannon and T. A. Stringer; and that by the defendant's failure to perform the contract the plaintiff was damaged in the sum of $550, this being the difference between the contract price of the land and its market value at the time of the breach of the contract. The defendant, in his answer, denied the alleged breach of the contract, and averred that the sale to third persons, alleged in the petition, was made subject to the contract

between the plaintiff and himself, and that the purchasers agreed to perform the contract on his part and held themselves ready to do so until voluntarily released by the plaintiff. It was further pleaded that before that sale the plaintiff breached a provision of the lease that he should pay the taxes on the land as a part of the rent, or pay the plaintiff an equivalent sum. The trial of the case resulted in a verdict against the defendant for $200, and in his bill of exceptions he complains of the overruling of his motion for a new trial, in which it is alleged that the verdict was not supported by evidence.

At the trial the plaintiff testified, that on July 1, 1915, he sent his son to tell the defendant that "some time during the month of September every dollar of his money would be ready," and that he (the plaintiff) "would want title to the place;" that he "never did offer Mr. Copeland the money, but told him that the money would be ready;" he lived on the place until the contract expired. As to the taxes he testified, that he paid them one year only, and did not pay the amount of the taxes to the defendant; that the defendant told him that he (the defendant) would pay the taxes. Alex. Hancock, the plaintiff's son, testified: "I came to Cairo to see Mr. Copeland on the 2d of July, 1915, . . in behalf of my father. . . I told him that his money would be ready for him in September, 1915. He said, . . 'I have done sold it . . and got my money.' I said, 'What are we going to do about that?' He said, 'Whatever you and the other fellow can do will be all right with me.' He told me to go to the Citizens Bank and see Mr. Searcy. He then turned away and left. . . The place was worth more than $1,000 at that time. He never told me whom he had sold the place to. . . I did not have the money when I went to see Mr. Copeland, but I told him the money was ready; . . that my father would have the money some time in September, then he would be ready to take up the contract. I never did go to him with the money and offer to take up the contract. I went to the Citizens Bank to see Mr. Searcy. He said he did not know a thing about it. . . I got Mr. Weathers to write a letter to Mr. Brannon about this land, at the instance of my father." It was testified that the plaintiff received, in reply to that letter, a letter introduced in evidence, signed F. M. Brannon, dated "7/19/15," requesting to be informed as to the number of acres

in the place referred to in the preceding letter, and the price per acre, and saying, "Will then advise you further in the matter. We bought more than one tract from Mr. Copeland." It was testified that "land around there is selling for $20 and $30 per acre;" and the land in question was 45 acres.

The defendant testified, that he traded the land in question, with two other places, to Brannon and Stringer, for some land in Alabama; that the consideration recited in the conveyance was about $2,500 "for 105 acres in the whole tract;" that the value of the 45 acres in this land was about $400; that he sold it subject to the option that Hancock had; that neither of the Hancocks ever tendered him the money for the place in compliance with the option; and that he never told Hancock not to pay the taxes. He testified that Stringer signed a paper (introduced in evidence) as follows: "Cairo, Ga., Jan. 26, 1915. This is to certify that we, the undersigned, agree to carry out the contract between W. J. Hancock and W. H. Brock and Leandy Smith and T. S. Copeland, who has the privilege of buying said farm at $20.00 per acre. W. H. Brock is to pay the undersigned $100.00 a year rent. F. Brannon Realty Co., by T. A. Stringer, Vice-Pres." W. S. Wight testified: "I acted as agent for Stringer and Brannon in handling the property which they traded for from T. S. Copeland. During this time I had some dealings with Mr. Hancock—Mr. Alex. Hancock. . . I was authorized to close this land deal with Mr. Hancock according to the terms of the option from Mr. Copeland. I notified Mr. Hancock that I was prepared to comply with the option which he held. Mr. Hancock never offered to comply with his part of the contract. After Mr. Hancock failed to comply with the contract and after the option had expired I sold the place to John Johnson for $400. Mr. Alex. Hancock came to me several times, and eventually told me that he could not get the money to close the deal. Early in the fall of 1915 I notified them that I would make them a deed." The brief of the evidence states that a letter was exhibited to Mr. Wight, which he admitted signing; and the brief contains a fragment of a letter, without address and with the signature, "W. S. Wight," dated October 23, 1915, which says that he has at last heard from Mr. Brannon, and "he can not accept your offer." William Searcy testified, that he wrote a letter to Brannon for Alex. Hancock, who told him to write that he

would not be able to make the payment and asked for an extension of time; he thought this was in the summer. Alex. Hancock testified, in rebuttal: "On the second Monday in July, when I came to see Mr. Copeland, he told me that he had sold the place and had got his money for it. He did not say anything about this contract between him and Mr. Stringer, and did not tell me who he sold the place to. He told me to go and see Mr. Searcy. At the time I went to see Mr. Copeland we had part of the money and had made arrangements to get the balance from J. N. Carter in September."

*L. W. Rigsby,* for plaintiff in error, cited: 39 Cyc. 1232-3, 1238; *Larned* v. *Wentworth,* 114 *Ga.* 208; *Black* v. *Maddox,* 104 *Ga.* 157; Elliot *v.* Delaney, 217 Mo. 1414.

*J. Q. Smith,* contra, cited: *McLeod* v. *Hendry,* 126 *Ga.* 167; *Pearson* v. *Horne,* 139 *Ga.* 453 (3a) *Thurman* v. *Smarr,* 145 *Ga.* 312; *Irwin* v. *Askew,* 74 *Ga.* 582; *Randall* v. *Bell,* 12 *Ga. App.* 614.