### GRAHAM v. JONES.

(Circuit Court of Appeals, Fifth Circuit. October 12, 1921.)

#### No. 3661.

1. **Vendor and purchaser ⬤⟝18(3)—Time is of essence of option.**
   In an option to purchase land time is of the essence of the contract, and where payment is not made within the time limited the option expires.

2. **Vendor and purchaser ⬤⟝18(4)—Letter of third party held not repudiation by vendor.**
   Where vendor gave an option to purchase land, title to which was vested in a corporation, a letter from the president of the corporation to the option holder, stating that the vendor had said that the option holder had offered to buy subject to a lis pendens, was not a repudiation by the vendor of the option contract.

3. **Vendor and purchaser ⬤⟝18(3)—Conditional tender held not sufficient.**
   Where vendor gave an option to purchase land, title to which was vested in a corporation, a tender of a check for the payment required to exercise the option was insufficient, where conditioned on the execution by both the vendor and the corporation of the contract of sale sent with the check; the corporation not being a party to the option.

4. **Vendor and purchaser ⬤⟝170—Conditional tender not sufficient.**
   A tender of purchase money of land, if coupled with the condition that the party to whom made shall execute a deed to the land, is not a good tender.

In Error to the District Court of the United States for the Southern District of Georgia; Beverly D. Evans, Judge.

Action by John A. Graham against Allen W. Jones. Judgment of dismissal, and plaintiff brings error. Affirmed.

⬤⟝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

William H. Barrett, of Augusta, Ga., and James M. Hull, Jr., of Augusta, Ga., for plaintiff in error.

E. H. Callaway, of Augusta, Ga., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. Graham brought suit against Jones in the United States District Court for the Southern District of Georgia to recover damages for the alleged breach of an option for the sale of lands in Florida. The petition was dismissed on demurrer.

The question raised is: Had the option ripened into a binding contract? The option was contained in two letters dated July 31, 1919. By the first letter Jones agreed to have conveyed to Graham, or assigns, by good and sufficient warranty deed by the National Security Company, a corporation in which the title was vested, the lands described therein, containing 10,280 acres, more or less, for $8 per acre; the sum of $1,000 to be paid on or before August 10, 1919, and the balance on or before September 1, 1919. Jones was to furnish Graham, or assigns, a certified abstract, showing clear, unincumbered, merchantable title to said lands in said Security Company. Jones was to discharge all taxes and liens on the land, and on payment of the full purchase price cause to be delivered a warranty deed from said Security Company, conveying said lands by a clear and merchantable title.

Graham was to have "this option to purchase said lands without payment until August 10, 1919," on or before which date Jones was to be paid $1,000, and on its payment Graham was to have until September 1st in which to complete the payment of the purchase price, and if not paid by said date the agreement to sell to be void; the $1,000 to be retained as liquidated damages. If the $1,000 was not paid on or before August 10, 1919, the agreement was to terminate as of that date, and to be null and void and of no effect.

This letter created an option without consideration until August 10th, when, on payment of $1,000, it would have constituted a contract between the parties for the purchase and sale of the land, with the right in Graham to avoid further compliance by forfeiting $1,000 as liquidated damages on failure to complete the sale by September 1st. The second letter agreed that, if the option was complied with, the total price should be $70,000.

It appears that in 1918 a contract for the purchase of said land was entered into between Graham and the Security Company, which was canceled by Graham on request of Jones in March, 1919, to enable him to effect a settlement with one Wilson, who claimed an interest therein. Jones, in the letter requesting such cancellation, promised that if he acquired Wilson's interest he would convey the land to Graham for $7 per acre at any time within three months of the settlement of said controversy. Jones never acquired Wilson's interest.

On August 4, 1919, Graham wrote Jones a letter, addressed to Midville, Ga., stating he was prepared to pay the $1,000 on August 10th, requesting Jones to have the abstract brought down to date as soon as possible, and to state where he could communicate with Jones on or about August 10th for the purpose of making the $1,000 payment, sug-

gesting that Jones meet him in Atlanta on the 11th to receive payment. He requested a prompt reply stating to whom he should send the $1,000 in the event Jones would not meet him in Atlanta.

On August 7th, E. W. Brooks, president of the National Security Company answered said letter from Midville, saying the option agreement of July 31st and said letter of August 4th had been turned over to the writer. Brooks requested that the check for $1,000 be sent to him, on receipt of which he would send the Security Company's usual form of option allowing payment of the $70,000 on or before September 1, 1919. The letter also stated that Jones said he had called Graham's attention to the lis pendens recorded in Manatee county, Fla., and that Graham had offered to buy subject to said lis pendens.

On August 9th, Graham replied to Brooks, rehearsing his version of the agreement, and denying that he had agreed to accept the title subject to the lis pendens, but that he had stated "that the title would have to be investigated by the attorney of the purchaser, who would have to certify that the same was not a cloud on the title, and that the Security Company's deed conveys a clear, unincumbered, merchantable, fee-simple title, before accepting same or making final payment." He advised that he was sending a check, accompanied by a contract to be signed by Jones and the Security Company, providing for the sale of said land, and binding all parties according to its terms, to the Bank of Midville, to be delivered on the execution of said contract by said Jones and said Security Company. Graham also on said August 9th wrote to the Bank of Midville, inclosing a certified check for $1,000, payable to the order of Jones, together with said contract, with direction to deliver the check on execution of said contract. The check was requested to be returned by the Bank of Midville, and the signature of the Security Company to the contract tendered by Graham declined. No other tender of payment of said $1,000 seems to have been made at any time, and no tender of the $69,000 was ever made.

[1] Whether there was, or not, any consideration for the option of July 31, 1919, it is plain that its continuance beyond August 10, 1919, was conditioned on the payment of $1,000 on or before said date. If payment of $1,000 is not made on or before August 10th by express terms, it is provided that "this agreement likewise will terminate as of that date, and will be null and void and of no effect." It is therefore plain that the contract was an option, in which time was of the essence of the contract, and that the payment of the $1,000 on or before that date was essential to keep it alive. In an option to purchase land, time is of the essence of the contract, and where not made within the time limited the option expires. "It is peculiarly a contract of which time is of the essence." Larned v. Wentworth, 114 Ga. 222, 39 S. E. 895; Jarman v. Westbrook, 134 Ga. 19, 67 S. E. 403; Pollock v. Riddick, 161 Fed. 280, 88 C. C. A. 326; Kelsey v. Crowther, 162 U. S. 404, 408, 16 Sup. Ct. 808, 40 L. Ed. 1017.

[2] It is insisted that, when Brooks wrote his letter of August 4th, the statement therein that Jones said Graham had agreed to take the property regardless of the lis pendens filed by Wilson in Manatee county was a repudiation of the agreement of July 31, 1919. We do not

think it is. It was only a statement of Brooks of what Jones claimed to be the result of a conversation, which in his reply Graham admits was had, respecting this lis pendens, and was no claim of a change of the contract. Both of these letters are set out in plaintiff's petition. Graham did not regard it as a withdrawal by Jones from the contract, but proceeded on the assumption that the option continued of force, and sent his check for delivery on the conditions contained in his letter to the bank.

[3] If the tender of the check on August 11th was in time, the same was not an unconditional tender, such as is required to constitute a tender under an option to buy land. Conceding that Jones would have been bound to accept a tender made according to the terms of the letter of July 31st, no such tender was made. The offer of the check was conditioned on the execution by both Jones and the Security Company of the contract of sale sent with it. The Security Company was not a party to the letter of July 31st. Had the option extended in that letter ever ripened into a fixed contract for the sale of, and payment for, said land, it would have been a contract alone between Graham and Jones, and Jones only would have been liable for a breach. Had the Security Company signed the contract demanded by Graham as the condition to the delivery of his check, payable to Jones, it would have been liable for any breach of that agreement, as well as Jones.

[4] A tender of purchase money of land, if coupled with the condition that the party to whom made shall execute a deed to the land, is not a good tender. De Graffenreid v. Menard, 103 Ga. 651, 30 S. E. 560; Morris v. Continental Ins. Co., 116 Ga. 53, 42 S. E. 474; Terry v. Keim, 122 Ga. 43, 49 S. E. 736. It is quite clear that no tender of the $1,000 was ever made under the terms of said letter of July 31st, but only coupled with a demand for a contract to be signed by the National Security Company; that therefore the option never continued of force after August 10, 1919, and the District Court correctly decided that plaintiff's petition set up no cause of action.

Judgment affirmed.