**UNITED STATES of America,**
**Plaintiff,**

v.

**758.72 ACRES OF LAND, MORE OR LESS, IN BOONE AND CARROLL COUNTIES, ARKANSAS, and Tuck Stacy, et al., and Unknown Owners, Defendants.**

**No. 428.**

United States District Court
W. D. Arkansas,
Harrison Division.
April 17, 1959.

Chas. W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Ft. Smith, Ark., for plaintiff.

Ted P. Coxsey, Berryville, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

Involved herein are two motions filed by the government to set aside the verdict and for judgment notwithstanding the verdict on Tracts Nos. P–1603, P–1603E–1, P–1603E–2, P–1603E–3 and P–1603E–4.

The motion to set aside the verdict was filed on March 16, 1959, pursuant to Rule 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A., in which the plaintiff alleged:

"1. Verdict is contrary to law in that the Claimant, out of the presence of the Court while on the view of the premises herein involved, told certain members of the jury that the remainder was insufficient to justify the rebuilding of his home thereon.

"2. Verdict is contrary to the evidence for the allegation of fact as set forth in Paragraph 1.

"3. For the above reasons, the verdict is contrary to both the law and the evidence."

On April 4, 1959, the defendant, Ray Badley, former owner of the above enumerated tracts, filed his response in which he denied that he told certain members of the jury that the remainder of the land was insufficient to justify the rebuilding of his home thereon.

He further alleged:

"2. The evidence developed in the trial abundantly proved the remainder to be insufficient to justify continued farming operations thereon by respondent, and therefore such alleged statement could not be prejudicial to movant had same been made.

"3. That respondent did not make any improper statements on such occasion out of the presence of the Court to any members of the jury, but that Lendon Chambers, as shown by exhibit 'A' attached hereto, the Government's representative on view of the premises, made highly improper and prejudicial statements in the presence and hearing of several members of the jury to the effect that the barn covered by the easement would not be molested, and respondent would have absolute right to its use and occupancy free from restrictions or interference from any source; and further, he stated that he had experienced a similar situation wherein United States of America had acquired a portion of his land and imposed an easement on a portion thereof for similar purposes, and that a barn located on such affected land had been left intact, unmolested and with no restrictions as to use and occupancy imposed."

On March 16, 1959, the plaintiff filed its motion for judgment notwithstanding the verdict, as follows:

"Comes now the plaintiff, United States of America, by and through its attorney for the Western District of Arkansas, pursuant to Rule 59 of the Federal Rules of Civil Procedure, moves that the verdict herein

be set aside, and that judgment be entered in favor of the Claimant in the sum of $6200.00 as accord and satisfaction was reached between the parties herein as indicated by the attached exhibits."

On April 21, 1958, the plaintiff filed its complaint to condemn the lands therein described which included the tracts of land hereinbefore mentioned and which at that time was owned by the defendant, Ray Badley. On the same date a declaration of taking was filed to obtain fee simple title in Tract P–1603 containing thirty-five acres and the perpetual right, power, privilege and easement occasionally to overflow, flood and submerge Tracts P–1603E–1, five acres, more or less; Tract P–1603E–2, 33.30 acres, more or less; Tract P–1603E–3, 1.50 acres, more or less; and Tract P–1603E–4, .50 of an acre, more or less.

On April 22 the court entered an order vesting the possession of the property in the plaintiff. The defendant landowner did not file an answer, but the question of just compensation proceeded to trial to a jury on March 9, 1959. At the conclusion of the trial, the court sent the jury to view the premises and placed the jury in charge of a Deputy United States Marshal. By agreement of the plaintiff and the defendant, Mr. Lyndon Chambers was designated by the government as its representative to show the land to the jury, and the defendant, Ray Badley, was designated to act on behalf of himself for the same purpose. The Deputy United States Marshal was administered the usual oath as to his duties in keeping the jury together free from contact by other parties, and the representative of the government and the landowner, Ray Badley, were instructed as to their duties and both were administered the oath in conformity with the instructions given by the court as to their duties while the jury was viewing the premises.

On March 10, 1959, after viewing the premises, the jury returned into court the following verdict:

"We, the Jury, find just compensation for taking Tract No. P–1603,

and the imposition of perpetual easements on Tracts Nos. P–1603E–1, P–1603E–2, P–1603E–3, and P–1603E–4, including severance damages, to be $15,000.00."

The plaintiff had deposited upon the filing of the declaration the sum of $6,100 as estimated just compensation for the fee simple title to the 35 acre tract and for the easement on the four tracts amounting to 43.30 acres.

The entire tract of land owned by the defendant consisted of 180 acres and was traversed by Yocum Creek. The 35 acres acquired in fee simple was situated on either side of the creek. Tract 1603E–2 was situated north of the 35 acre fee simple tract and consisted of 33.30 acres, more or less. The other three easement tracts were situated south of the 35 acre fee simple tract.

█ . The defendant landowner consulted Mr. Ted P. Coxsey, an attorney of Berryville, Arkansas, concerning his rights, and apparently the United States Attorney for the Western District of Arkansas and Mr. Coxsey entered into negotiations with an end in view of agreeing upon the amount of just compensation. On July 21, 1958, Mr. Coxsey wrote a letter to the United States Attorney in which he stated:

"It appears the Government has proposed to pay them the approximate sum of $6100.00, for the land embraced in the suit with the understanding that a certain barn on the premises be moved off. This requirement would involve the expenditure of a considerable sum of money according to estimates secured by Mr. Badley due to the size and structure of the building which measures 60 ft. x 36 ft. with concrete foundation 4 feet high on the South side running the full length (60 feet) of the barn, and 2½ feet running the full length thereof on the North side. Also, it is a two-story, exceptionally fine dairy barn with modern built-ins and equipment.

"Mr. and Mrs. Badley are willing to accept the above offer and sign a

covenant running with the land in which the Government will be absolved from blame, damage or liability in case water should reach, cover or surround the barn in consideration of the barn being left at its present location and in its present condition with no restrictions on use and occupancy by the Badleys.

"If you will advise me concerning this proposal at your very earliest convenience, I shall deeply appreciate it."

The easement that was imposed upon the four tracts aggregating 43.30 acres provided that the plaintiff should have the perpetual right, power, privilege and easement to occasionally overflow, flood and submerge the land in connection with the operation and maintenance of the Table Rock Dam and Reservoir Project, "together with all right, title, and interest in and to the structures and improvements now situate on the land; provided that no structures for human habitation shall be constructed or maintained on the land and provided further that no structures of other type shall be constructed or maintained on the land except as may be approved in writing by the representative of the United States in charge of the project; reserving, however, to the owners of the land, their heirs and assigns, all such rights and privileges as may be used and enjoyed without interfering with or abridging the rights and easements hereby acquired."

Evidently there were further conferences between the United States Attorney and Mr. Coxsey subsequent to the letter of July 21, since on August 29, 1958, the United States Attorney sent to Mr. Coxsey the original and one copy of a proposed judgment relative to the tracts of land. In the letter Mr. Atkinson, the United States Attorney, said:

"After you have had an opportunity to examine same, and if you find it satisfactory, please endorse your approval on the original and return it to me. You may retain the copy for your files."

Evidently Mr. Coxsey, as the attorney for the landowner, did not find the proposed judgment to be satisfactory, as it was not approved and returned to the United States Attorney.

In his affidavit of the landowner attached to his response to the motion to set aside the verdict, he denies that he made any statements in the presence of the jury at the time it was viewing the land and reiterates the allegations in his response to the effect that Mr. Chambers, the representative of the plaintiff, did make certain statements as set forth in his response. In his brief in opposition to the motion for judgment notwithstanding the verdict, the landowner contends that there was no acceptance of the government's offer as evidenced by the proposed judgment, that there was no accord and satisfaction reached and that negotiations looking to a settlement of the amount of just compensation continued up until the case proceeded to trial to a jury.

Both motions of the plaintiff purport to have been filed pursuant to Rule 59, Federal Rules of Civil Procedure. That rule provides:

"A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."

As stated above, the case proceeded to trial without any contention or plea on the part of the plaintiff that there was an agreement between the plaintiff and defendant as to the amount to be paid for just compensation, but in support of the motion for judgment notwithstanding the verdict the plaintiff contends that judgment should be entered in favor of the claimant in the sum of $6,200 because an accord and satisfaction was reached between the parties. The plaintiff did not move at the close of the evidence introduced by the defendant landowner for a directed verdict in the sum of $6,200. Neither did the plain-

tiff at the close of all of the evidence move for a directed verdict as provided by Rule 50, Federal Rules of Civil Procedure.

Rule 71A, Federal Rules of Civil Procedure, provides:

"The Rules of Civil Procedure for the United States District Courts govern the procedure for the condemnation of real and personal property under the power of eminent domain, except as otherwise provided in this rule."

There is no provision in Rule 71A providing that Rule 50 does not apply.

While the defendant did not file any answer, yet, under the provisions of Rule 71A(e), he had the right to present evidence at the trial as to the amount of compensation to be paid for his property.

Under the provisions of subparagraph (f) of the Rule, the plaintiff had the right at any time before the trial of the issue of just compensation to file any amendment that it might desire to offer, but notwithstanding the provisions of the Rule no amendment was offered or filed setting up the claim that there had been a valid agreement reached between the parties fixing just compensation.

■ The verdict returned by the jury is well within the range of the testimony adduced at the trial. The witnesses were required to fix the value of the entire tract of 180 acres prior to the date of taking and then to fix the value of the remaining after the taking of the 35 acres in fee simple and the imposition of the easement on the four tracts of 43.30 acres. The testimony on the part of the witnesses for the defendant landowner fixed the total damages of the landowner at from $16,000 to $18,000, while the witnesses for the plaintiff fixed the total damages at from $6,475 to $6,-600. The verdict was for $15,000.

An examination of the plat discloses that the landowner's barn was situated on one of the easement tracts, and that practically all of the tillable land in the entire 180 acre tract was taken either in fee simple or by the imposition of the easement. The tract was further divided as to actually make the remaining land of very little practical value. The testimony amply supported the contention of the landowner that the remaining land was not usable, and, as one witness for the landowner stated: the value of the remaining land was just what any adjoining landowner would be willing to pay.

The court does not think that the parties reached any agreement as to the amount that should be paid for just compensation, and certainly the plaintiff did not feel that a valid agreement had been entered into, else it would have filed an amendment to the declaration of taking and the complaint and alleged that an agreement fixing just compensation had been entered into. Such procedure is recognized and has been approved. See, Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240; Wachovia Bank & Trust Co., v. United States, 4 Cir., 1938, 98 F.2d 609; United States v. Stott, 8 Cir., 1944, 140 F.2d 941.

When the court requested the plaintiff and the defendant to each name a representative to accompany the jury on the view of the premises, the attorney for the landowner suggested that the landowner himself, Ray Badley, be allowed to accompany the representative of the plaintiff, Lyndon Chambers. In accordance with the suggestion of the parties, the court approved the representatives so selected.

The record does not establish that any improper statements were made to any member of the jury during the view, and, since the court is of the opinion that there was no valid agreement entered into by the parties fixing just compensation, and, since the verdict of the jury is amply supported by the testimony, the motions of the plaintiff should be overruled, and an order overruling said motions is being entered today.