### 10355.   SNEAD *et al. v.* WOOD.

1. An option to purchase property can be "exercised," unless otherwise provided in the option contract, by the mere giving, within the life of the option, of an unconditional notice, by the holder of the option, to the other party or his agent, that the former has elected to purchase the property at the price and upon the terms stated in the option contract.

(a) An option to purchase can be exercised without the payment of the purchase-price, or the tender thereof, unless the option contract provides for such payment as a condition precedent to the exercise of the option.

2. A broker is entitled to his commissions where, as agent of the owner, he procures a purchaser ready, able, and willing to purchase, and who actually offers to purchase on the terms stipulated by the owner. Civil Code (1910), § 3587. This provision of the code applies where the purchaser procured by the broker first buys an option to purchase, and subsequently, within the life of the option, exercises his option by electing to purchase and gives timely and unconditional notice thereof to the other party. In such a case the broker's right to his commissions does not ripen into a cause of action until the option has been actually exercised. As soon, however, as the option has been exercised, his cause of action is complete.

DECIDED OCTOBER 9, 1919.

Complaint; from Richmond superior court—Judge H. C. Hammond. January 11, 1919.

*Callaway & Howard,* for plaintiffs in error, cited: Civil Code (1910), § 3587; *Emery* v. *Atlanta Real Estate Exchange,* 88 *Ga.* 325, 327; *Phinzy* v. *Bush,* 129 *Ga.* 488-9; *Hyams* v. *Miller,* 71 *Ga.* 618; *Robinson* v. *Weller,* 81 *Ga.* 707; *Jarman* v. *Westbrook,* 134 *Ga.* 20; *Arnett* v. *Fuller,* 134 *Ga.* 609; *Larned* v. *Wentworth,* 114 *Ga.* 222; *Hanesley* v. *Bagley,* 109 *Ga.* 346; *Sperry* v. *Planters*

*Rice Mill Co.,* 16 *Ga. App.* 35; *Black* v. *Maddox,* 104 *Ga.* 158; *Sharp* v. *Kennedy,* 81 *Ga.* 263; *Angier* v. *Equitable Bldg. Asso.,* 109 *Ga.* 625; *Williams* v. *Wright,* 69 *Ga.* 759; Civil Code (1910), § 4322; *Elder* v. *Johnson,* 115 *Ga.* 691; *DeGraffenreid* v. *Menard,* 103 *Ga.* 651; *Terry* v. *Kein,* 122 *Ga.* 43; *Perry* v. *Paschal,* 103 *Ga.* 137; 21 Am. & Eng. Enc. L. 930-2; *Sheffeld* v. *Whitfield,* 6 *Ga. App.* 764; *Payne* v. *Ponder,* 139 *Ga.* 283; *Harvil* v. *Wilson,* 11 *Ga. App.* 156; *Wilson* v. *Verner,* 12 *Ga. App.* 512; *Georgia Iron & Coal Co.* v. *Rogers,* 12 *Ga. App.* 429; *Nutting* v. *Kennedy,* 16 *Ga. App.* 569; *Stallworth* v. *Martin,* 17 *Ga. App.* 689; *McKinnon* v. *Hoke,* 118 *Ga.* 462; *Venable* v. *Burton,* 129 *Ga.* 537 (3).

*Wright & Wright and Jackson,* contra, cited: Civil Code (1910), §§ 3587, 4362, 4368; 9 Corpus Juris, 604; *Monroe* v. *McCranie,* 117 *Ga.* 891; *Gabbett* v. *Atlanta,* 137 *Ga.* 183; *A. C. L. R. Co.* v. *Knapp,* 139 *Ga.* 427; 25 Cyc. 1412; *Smith* v. *Tatum,* 140 *Ga.* 719; *Odell* v. *Dozier,* 104 *Ga.* 203; *Ga. Iron & Coal Co.* v. *Rogers,* 12 *Ga. App.* 429 (1); *Fenn* v. *Ware,* 100 *Ga.* 563; *Davis* v. *Morgan,* 96 *Ga.* 518 (2); 39 Cyc. 1247; *Robinson* v. *Perry,* 21 *Ga.* 183; *Perry* v. *Paschal,* 103 *Ga.* 134, 140; 39 Cyc. 1237 et seq.; *Larned* v. *Wentworth,* 114 *Ga.* 209 (2); and cases distinguished.

BROYLES, C. J. This was a suit against the owners of a tract of land to recover a broker's commissions for the lease and sale of the land. Before the sale was consummated, however, by agreement of all parties, the land, instead of being sold, was leased, in the fall of 1911, to the proposed purchaser for a term of five years, beginning January 1, 1912, and ending December 31, 1916. In the lease-contract, which was attached to the petition and made a part thereof, it was recited that the lessors "hereby grant and sell unto the party of the second part, his heirs and assigns, an option to purchase the property described in paragraph one, at the expiration of this lease, for the price of $35,000. It is understood, however, that while the party of the second part shall during the life of the lease notify the parties of the first part of his intention to buy, that shall not terminate the lease, but that the said party of the second part, his heirs and assigns, shall continue in possession of said property as a tenant and pay the annual rental as above provided." The original petition set out that the plaintiff negotiated the sale and succeeded in substituting the lease-contract, and that Hankinson, the lessee, by Hagler, his assignee,

had given timely and proper notice to the defendants that he had exercised the option to purchase the land for $35,000, the price named in the option.

The suit was filed on the first day of November, 1916. The defendants demurred to the petition, on the general ground that it set forth no cause of action, and on the special ground that it appeared on the face of the petition that the plaintiff's cause of action was barred by the statute of limitations, for the reason that the alleged services were rendered in the fall of 1911, and his suit was not filed until more than four years after the services were rendered. The court overruled the demurrer, and the defendants excepted pendente lite. By their plea also this question as to bar by the statute of limitations was raised. Subsequently the petitioner offered the following amendment to his petition, which was allowed without objection: "(e) Petitioner says that it was agreed between himself and the defendants that no part of his commissions for the rental or sale of said property was to become due and payable unless and until the option to buy said land contained in said lease was exercised by the purchaser or his assignee; and that the said purchaser, by J. C. Hagler, the assignee of the rights of J. L. Hankinson under said lease, did on the——day of November, 1916, exercise the option to purchase said land, and made a formal demand of said defendants that they make to the said J. L. Hankinson, or his assignee, the said J. C. Hagler, a good and sufficient title thereto upon the payment by the purchaser of the sum of thirty-five thousand dollars ($35,000.00), which sum the said purchaser, J. L. Hankinson, by J. C. Hagler, his assignee, was then ready, willing, and able to pay, and did then and there offer to pay, in cash, the said purchase-money of $35,000.00 to the said defendant, upon the execution to the said purchaser of a good title to said land; whereupon petitioner's said commissions for the rental and sale of said property then and there first became due and payable by the said defendants to petitioner."

On the trial the plaintiff amended the amendment to the petition by adding, after the word "assignee" in the 5th line thereof, the following words: "that is to say, unless and until the said purchaser, or his assignee, shall, within the time prescribed in said lease, be ready, able and willing to buy, and actually offered to buy said land for the sum of $35,000, stipulated in said lease." This

amendment was objected to by the defendants, upon the grounds that it was inconsistent with the original amendment and was an effort to change the law of an option contract and the legal method of exercising the same by substituting the law of an actual contract of bargain and sale. The court overruled the objections and allowed the amendments, and the defendants excepted pendente lite. The case proceeded to trial and a verdict was returned for the plaintiff for $1,625. The defendants' motion for a new trial was overruled, and to this judgment exceptions were taken.

1. The controlling question in this case is whether the option could be exercised by the optionee or his assignee by the mere giving of a timely notice to the optionor or the optionor's agent that the optionee had elected to purchase the property on the terms of the option. It is strongly insisted by learned counsel for the plaintiffs in error that an option can not be exercised except by payment or tender of the purchase-price. We can not agree with this contention. An option contract to purchase is at first unilateral, and continues so until the optionee exercises his right of election to purchase and gives an unconditional notice thereof to the optionor, whereupon it ripens into a binding promise on the part of the optionor to sell. The "exercise" of an option to purchase is merely the election of the optionee to purchase. The elements of the act commonly called "exercising the option" are, first, the decision of the optionee to purchase the property under the terms of the option, and, second, the communication of this decision to the optionor within the life of the option. An "election," other than by the performance of some act, involves merely the giving of notice thereof to the optionor. In the absence of express provisions in the option contract, the election must be made in accordance with the terms implied by law. However, the particular act or acts which constitute an election may be fixed by the terms of the option itself. The kind of notice and the mode of communicating it may also be fixed by the terms of the option contract. The option contract can, of course, provide that in addition to the communication of the bare fact that the optionee has elected to purchase, a part or the whole of the purchase-money must be paid as a condition precedent to the exercise of the option privilege. In such a case the mere notice of an election would be clearly insufficient. On the other hand, if the option contains no stipulation

that the whole or any part of the purchase-price must be so paid, and provides for notice merely, and contemplates that the price shall be paid after the act of election, when the deed is tendered, the option can be legally exercised without the payment or tender of any part of the purchase price. James on Option Contracts, §§ 102, 105, 719, 801, 809, 913, 844, 901, 914, 915, and authorities cited; 39 Cyc. 1232. A provision in a lease giving the lessee, "his heirs and assigns," an option to purchase the leased premises is a covenant running with the land and passes to the assignee of the leasehold term. An assignee of an option contract is the proper person to exercise the option privilege and give the required notice. James on Option Contracts, §§ 607, 802, 804; 39 Cyc. 1247, 1248. Where an option contained in a lease contract gives the lessee the privilege of purchasing the property "at the expiration" of the lease, the lessee can exercise his right of option, that is by giving unconditional notice that he has elected to purchase the property, at or before the expiration of the lease. James on Option Contracts, § 852. Especially is this true in the instant case, where the option contract contains the following provision: "It is understood, however, that while the party of the second part shall during the life of the lease notify the parties of the first part of his intention to buy, that shall not terminate the lease, but that said party of the second part, his heirs and assigns, shall continue in possession of said property as a tenant and pay the annual rental as above provided."

We think it clear in this case the option could be exercised by the mere giving of a timely unconditional notice that the assignee of the optionee had elected to purchase the land at the price and on the terms stated in the option-contract. This ruling is not in conflict with the decisions in *Emery* v. *Atlanta Real Estate Exchange,* 88 *Ga.* 321 (14 S. E. 556), *Larned* v. *Wentworth,* 114 *Ga.* 208 (39 S. E. 855), *Phinizy* v. *Bush,* 129 *Ga.* 479 (59 S. E. 259), or in any of the other cases cited by counsel for the plaintiff in error. While some of those cases contain rather broad statements apparently tending to a contrary holding, those statements should be construed in the light of the particular facts of the case then under consideration, and, when so construed, each of those decisions can be reconciled with the present holding.

The next question, then, is whether the notice given was an un-

conditional one. That notice was as follows: "As per our conversation in which you were notified that the contract between J. L. Hankinson and Mrs. Cora C. Snead, Mrs. Elizabeth S. Kersh (now Palmer), and Marion C. Snead, has been transferred to me, since our 'gentlemen's agreement' with you in August last, which, as explained, took the place of an injunction you would obtain for your clients if I did not cease cutting timber on the land leased from your clients, I have cut no timber, notwithstanding there had already been expended more than five thousand dollars above the value of the timber that has been cut in making improvements on the property. These expenditures were made in the confident belief, which I still entertain, that I had a perfect right under said contract to use any timber from said place, or its value, in making such improvements, and the fact that the improvements were made first in no way altered my rights. I consider that the action on the part of your clients constitutes a breach of such contract, and I propose to hold them responsible for all damages caused me thereby, and you will please accept this as formal notice to that effect. In preparation for the exercise of the option of purchase, provided for in such contract, I had the title to the land examined, and the report is made to me that your clients are not in a position to comply with their contract and convey a perfect title to such property, for the following, among other, reasons: If Mrs. Palmer or Mr. Snead should predecease their mother, leaving a child or children, the title of such child or children would not be affected by the deed from the parent, and further, that there is now pending in Columbia superior court a suit for some seven hundred acres of said land. *I now make formal demand upon your clients that they place themselves in a position to comply with their obligation in said contract with me to make me a good title to the nineteen hundred acres of land covered by such contract, upon the payment of $35,000.* I estimate that the land is worth materially more than that amount, exclusive of the aforesaid improvements I have made and not been reimbursed for, *and I will of course hold your clients for all damages that may be suffered by me by the breach of their contract.* Please let me have a prompt reply to this, advising, first, whether your clients still insist upon their demand, with a threat of injunction to enforce it, that I cut no more timber; and second, whether or not they will be prepared to make me a

perfect title upon my payment of $35,000." (Italics ours.)

While the election to purchase must be unconditional, the communication of the fact that the optionee has exercised his option right is not required to be in any particular form—unless so provided in the option contract. Where the communication advises the optionor that the optionee desires to exercise the option and is ready to pay the purchase-price, the notice is sufficiently unconditional. James on Option Contracts, §§ 823, 824. A notice of an election to purchase is not made conditional by the optionee criticising the title to the property and demanding that the optionors "place themselves in a position to comply with their obligation in said contract with me to make me a good title to the nineteen hundred acres of land covered by such contract, upon the payment of $35,000." Where it is clearly apparent from the communication that the optionee has elected to purchase the property at the price and on the terms of the option the notice is sufficient. James on Option Contracts, § 847. While the notice in the instant case is not as clear and definite as it might be, and while it contains much irrelevant matter, we think the italicized words clearly put the optionors on notice that the assignee of the option had elected to purchase the property at the price and on the terms stated in the option, and that the trial court did not err in so holding.

2. The provisions of section 3587 of the Civil Code (1910), that a broker's commissions are earned when he procures a purchaser ready, able, and willing to purchase, and who actually offers to purchase on the terms stipulated by the owner, are applicable to a case where the procured purchaser first obtains an option to purchase, and subsequently, within the specified time, exercises the option by electing to purchase, and gives an unconditional notice thereof to the optionor. In such a case the broker's right to commissions does not accrue until the option has been exercised. When, however, the option has been exercised, his right of action is complete. 9 Corpus Juris, 604, 605, note 75. See also, in this connection, *Mercer* v. *Planters Rice Mill Co.*, 16 *Ga. App.* 38 (84 S. E. 492). Under this ruling the plaintiff's action was neither barred by the statute of limitations nor prematurely brought.

From what has been said above, it follows that the original petition was not subject to the demurrer interposed, and that the amendments to the petition were really unnecessary and immaterial.

Only one of the amendments was objected to by the defendants, and none of the objections was upon the ground of immateriality. The grounds of the objections made were without merit, and the court did not err in allowing the amendment.

The controlling facts of the case show that the judge tried it under the proper theory of law, and that he committed no material error in his rulings upon the admissibility of evidence, or in his charge to the jury, or in his refusal to give the charges requested by the defendants.

The evidence was sufficient to show a legal assignment of the option to the alleged assignee, and authorized the verdict returned; and none of the special grounds of the motion for a new trial shows cause for a reversal of the judgment.

*Judgment affirmed.  Luke and Bloodworth, JJ., concur.*