**WACHOVIA BANK & TRUST CO. et al.**
**v. UNITED STATES.**

No. 4311.

Circuit Court of Appeals, Fourth Circuit.

Aug. 26, 1938.

R. E. Whitehurst, of New Bern, N. C. (M. S. Dunn, of New Bern, N. C., on the brief), for appellants.

Charles R. Denny, Jr., Atty., Department of Justice, of Washington, D. C., and Charles F. Rouse, Asst. U. S. Atty., of Kinston, N. C. (J. O. Carr, U. S. Atty., of Wilmington, N. C., and C. W. Leaphart and L. S. Apsey, Attys., Department of Justice, both of Washington, D. C., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and CHESNUT, District Judge.

NORTHCOTT, Circuit Judge.

This is an appeal from an order entered in an action at law in the District Court of the United States for the Eastern District of North Carolina, at New Bern. On June 24, 1936, the United States, the appellee, here referred to as the petitioner, filed a petition in said court seeking to condemn a certain tract of land consisting of 1548.80 acres located in Craven County, North Carolina, of which tract the appellant Wachovia Bank and Trust Company, Inc., guardian of William A. Erwin, III, a minor, owned one-half and appellant J. Harper Erwin owned the other half. The appellants, here referred to as the respondents, filed a joint answer to the petition. Appraisers were appointed and on May 8, 1937, reported to the court below fixing the value of said tract of land at $8.50 per acre. Exceptions to this report were filed by the respondents and a request for findings was tendered to the court. The judge below

overruled the exceptions to the report of the appraisers, refused the request for findings made by the respondents and entered an order condemning said tract of land. From this action of the court below this appeal was brought.

On March 18, 1935, the petitioner secured an option agreement looking toward the acquisition by the United States of the land in question for national forest purposes. This action was taken with a view to purchase under the Act of Congress known as the Weeks Act, approved March 1, 1911 (36 Stat. 961), as amended by an Act approved June 7, 1924 (43 Stat. 653), U.S.C. Title 16, Sections 515–517a, 16 U.S. C.A. §§ 515–517a. The option provided, among other things, the following: "That at any time within 12 months from the date of this instrument, if requested so to do by the said Secretary (of Agriculture), the said vendors will sell and at their own expense convey to the United States of America * * *," the land in question at $8.50 per acre, the acreage to be ascertained by a survey to be made by the Department of Agriculture. The option further provided:

"That in case the vendors are unable to show and establish title to the above-described lands satisfactory to the Attorney General of the United States, as provided by law (36 Stat. 961) then and in that event the United States will, if it deems advisable, institute proceedings for the condemnation of said lands."

The owners warranted that the land was unencumbered and that they had authority to convey it and they agreed to procure and record at their own expense all assurances of title which Government agents advised were necessary to show complete title in the United States. It was further provided:

"That pending vesting of title to said lands in the United States, the United States, if electing so to do, shall upon the acceptance of this option * * *, use, occupy, and administer, for the purpose of national forests or the establishment of national forests, any or all the lands herein described without charge and subject only to the limitations and restrictions herein provided."

The agreement provided that it was subject to the condition that the Wachovia Bank and Trust Company procure a court order authorizing it to execute the option as guardian of William A. Erwin, III, a minor, and the following day an order was obtained from the Superior Court of Durham County, North Carolina, approving the option and authorizing the guardian "to execute an option on said land for twelve months at the price of $8.50 per acre * * *."

Under date of March 30, 1935, the Department of Agriculture wrote the Wachovia Bank and Trust Company that the department had elected to purchase the lands in accordance with and under the provisions of the option, and stated that the Forest Service of the Department of Agriculture would proceed to establish the boundaries and ascertain the acreage of the tract; that immediately thereafter title examination would be made by the proper officials and payment would be made upon approval of the title. This letter stated that the bank would be promptly informed as to any further actions that might be required on its part.

On May 25, 1935, respondent J. Harper Erwin wrote the U. S. Forest Service and inquired if the option had proved satisfactory to the Government and on May 28, 1935, an official of the Forest Service replied that the option was acceptable and had been approved. On November 13, 1935, Erwin again wrote the Forest Service saying that he had not heard anything definite with regard to the option to which the Government's Title Attorney replied that the United States had formally taken up the option but that there were defects in the title which would have to be cleared up. This letter enumerated a number of defects and asked the respondent J. Harper Erwin if he thought they could be cleared up, and if not the matter would be handled by a friendly suit in condemnation. A copy of this letter was sent to the Wachovia Bank and Trust Company.

On January 1, 1936, J. Harper Erwin wrote the Government's Title Attorney, in part, as follows:

"After considerable delay, of which you are acquainted, we have finally decided to adopt your original suggestion to clear up the titles of Beachaven Farm by condemnation proceedings, and I will thank you to proceed to do this and accomplish it without undue delay. * * *"

On January 2, 1936, one A. W. Madison, Assistant Trust Officer of the respondent bank, wrote the Title Attorney as follows:

"As Guardian of William A. Erwin III we request that you go ahead with the con-

demnation suit in connection with the title to the farm known as the Beachaven Farm in Craven County."

After the report of the appraisers the cause came on to be heard before the court below on October 13, 1937, and on that date the court entered its judgment of condemnation, as above set out.

Two main questions are to be considered on the appeal: First, whether the respondent bank as guardian was bound by the option after the expiration of the twelve-month period fixed in the option. Second, whether in the condemnation suit the value of the tract of land was limited by the price fixed in the option.

■ It is contended on behalf of the respondent bank that the order of the court authorizing it as guardian to execute the option only contemplated an option for twelve months and that the transaction not being completed within this period the Government, under the option, had no rights enforceable in the condemnation suit instituted more than twelve months after the execution of the option. We cannot agree with this contention. The court order authorized the execution of the option; the option provided that in the event the title was not satisfactory to the Attorney General of the United States the condemnation suit would be instituted to settle the title. When the option was executed it was apparent that if it became necessary to resort to condemnation proceedings such proceedings could not be concluded within the twelve-month period fixed in the option. The State Court authorized the execution of the option with this provision in it. Both respondents, after being notified of defects in the title and after an unexplained delay on their part, requested that condemnation proceedings be instituted. The record discloses that there was no unnecessary delay on the part of the officials of the Forest Service in instituting the condemnation suit. Action on the part of the Government officials in matters of this kind is necessarily somewhat slow. Coggeshall v. United States et al., 4 Cir., 95 F.2d 986. The respondents knew these facts and entered into the option with the full knowledge of them and, as there was no unnecessary delay, are bound.

■ It is further contended that the twelve-month limit having expired before the transaction was entirely completed and the money paid over, the respondents should have had the right to show that the value of the land was, at the time of the appraisement, greater than the price of $8.-50 per acre fixed in the option and that the court erred in refusing to hear evidence tending to prove this fact. It is a well settled principle of law that the acceptance of an option is sufficient to convert it into a bilateral contract of purchase and sale. Breen v. Mayne, 141 Iowa 399, 118 N.W. 441; Atlas Portland Cement Co. v. American Brick & Clay Company, 280 Pa. 449, 124 A. 650; Snead v. Wood, 24 Ga.App. 210, 100 S.E. 714; Winders v. Kenan, 161 N.C. 628, 77 S.E. 687.

■ The option here did not make a tender of the purchase price a condition precedent to its acceptance. The very provisions of the option itself indicate a contrary intention. A number of things were to be done after the acceptance of the option; the acreage was to be ascertained; a good title was to be perfected by the vendors and a condemnation suit was to be instituted if the title was not satisfactory. The statute of the United States prohibits payment until a satisfactory title is vested in the United States (36 Stat. 961, 962, 16 U.S.C.A. § 517).

It is plain that the time limit of twelve months in the option and in the court order approving it referred to the time within which the United States should elect to exercise the option and not to the time within which the transaction was to be completed. When in January, 1936, the respondents requested the officials of the United States to proceed by condemnation they knew that such suit could not be concluded within the twelve-month period.

The record shows that the United States perfected its election well within the twelve-month period and gave a full and complete notice of such election to both respondents and upon failure of the respondents to furnish a satisfactory deed of conveyance the implication necessarily arose that the acquisition of the property was to be completed within a reasonable time. The officials of the Government did not delay action beyond a reasonable time under all the circumstances of the case and the respondents, at the time of the hearing in the court below, upon the report of the appraisers, were bound as to the price of the land, by the option.

612

It is contended on behalf of the respondents that the court erred in admitting the letter of February 28, 1936, from the Acting Secretary of Agriculture requesting the Attorney General to institute proceedings. There is no merit in this contention. No question is raised as to the right of the Government to condemn the property. The letter was introduced to show that the condemnation suit was instituted under proper authority and it is not claimed that the respondents had notice of the letter or were bound by it. The acceptance of the option that was binding upon the respondents was amply shown by other correspondence had with the respondents themselves. This letter was properly admitted in evidence.

It being true, as we have concluded, that the notice of acceptance of the option converted it into a bilateral contract binding on all the parties to it and considering the contract thus created as a whole, and interpreting it with reference to the nature of the transaction and the circumstances under which it was signed, we must conclude that the vendor respondents were bound by the price per acre fixed in the option. This price as shown by the correspondence was evidently a liberal one.

In the agreement the price was fixed even in the event of condemnation. The condemnation proceeding was contemplated in the option itself and an examination of the correspondence shows that the parties construed the contract as binding should condemnation become necessary.

Commissioners in condemnation proceedings are, of course, not bound by the price fixed in the option; and, if the point were raised by one not a party to the option, a different question would be presented. A party to the option, however, is not in position to complain that the price fixed by the option was adopted by the commissioners.

The option was valid; the respondents themselves requested the institution of condemnation proceedings; these proceedings were, under the circumstances, instituted and prosecuted without unreasonable delay on the part of the officials of the Government; the respondents were bound by the price in the option; and there was no error in the trial below. The judgment is accordingly affirmed.

Affirmed.