22128.   PETHEL v. WATERS.

CANDLER, Justice.   Henry L. Waters filed a suit for legal and equitable relief in the Superior Court of Hall County against D. T. Pethel, Jr. His petition in substance alleges: He leased a described farm from Pethel on March 23, 1956, for a period of five years from that date at $700 per month, payable in advance. The written lease which both the lessor and lessee signed gave him an option to purchase the premises during the

lease period. If he elected to purchase it during 1958, 1959, or 1960, he was to pay a stated amount for it and, if he elected to purchase it before the end of the lease period in 1961, he was to pay $20,000 for it. He took possession of the farm under the lease-option contract, has continuously remained in possession of it, and now has possession thereof. At the time of entering into the written lease-option contract with the defendant and as a part of the transaction and consideration therefor Pethel required him to purchase from and pay him $8,000 for certain livestock and farming equipment which he paid him for on May 7, 1956. He has paid Pethel all rent due under the terms of the contract and has in fact paid him as rent $600 more than was due. During 1959 and 1960 he notified Pethel several times that he had elected to and would purchase and pay him $20,000 for the farm during 1961 in accordance with the terms of the contract. He also requested Pethel to have a deed prepared for delivery to him on payment of the $20,000 and Pethel assured him that he would do so. About February 4, 1961, he talked with Pethel and asked him to deliver the deed pursuant to the contract and his previous election to exercise the option to purchase the farm, and Pethel at that time told him he already had the deed made out and would deliver it to him when the lease expired and he could pay him the $20,000 when the deed was delivered to him. During the month of February, 1961, he, without success, made several efforts to contact the defendant by telephone and by looking for him for the purpose of paying him the $20,000 and securing a deed from him to the farm. During the week of March 13, 1961, he called the defendant by telephone several times for the same purposes, but was unable to contact him. During April, 1961, he, at his office in Gainesville, Georgia, made another personal demand on Pethel for a deed to the farm and told him that the $20,000 due for it was then immediately available in his office in lawful currency, but Pethel then refused to accept it and deliver him a deed to the farm. At that time, Pethel sought to have him make a new contract for the farm which he declined to do. During May, 1961, he made an actual unconditional tender of $20,000 in lawful currency of the United States to Pethel by counting it out in his presence and offering it to him as the purchase money for the farm and without any demand for a deed or any other condition. On or about October 10, 1959, and again about Decem-

ber 19, 1959, he again told Pethel that he had elected to and was then exercising his option under the written contract and was buying the land in 1961 for $20,000 and wanted this clearly understood and wanted him to have a deed ready for delivery to him. Pethel at those times told him that he knew he had elected to purchase the farm and that he would bring the deed to him when the lease expired and he could pay the $20,000 for it when the deed was brought and delivered to him. The parties mutually agreed, understood and intended that the sale would be concluded in that manner. It is also alleged that the lease-option contract is fair, reasonable, lawful and equitable. Since the contract was made on March 23, 1956, and while he (Waters) has been in possession of the farm, he has made permanent improvements on it at a cost to him of $33,192.47, a substantial part of which was expended during February and March, 1961, and after Pethel had agreed to deliver a deed to him for the farm after the expiration of the option, which improvements were made with full knowledge on Pethel's part that he had elected to purchase the farm and Pethel had agreed to deliver him a deed for it after the expiration of the option. It is further alleged that the petitioner has at all times and in good faith relied on Pethel's statements, acts, and conduct and has in good faith relied on his express notice to Pethel of his election to purchase the farm and the improvements placed on the farm and Pethel's statement that he could in 1961 pay $20,000 for the farm when Pethel delivered him a deed to it, and for these reasons Pethel is estopped from contesting his right to purchase the farm on his payment to Pethel of $20,000 for it and is estopped from contesting or refusing to convey to him good title to the farm and the improvements thereon, and from pretending or claiming that he has not complied with all of the terms of the lease-option contract and all obligations thereunder. The prayers are for a judgment decreeing title to the farm in plaintiff on his payment of $20,000 either to Pethel or into the registry of the court and a judgment for $600—the amount he overpaid Pethel for rent. The defendant demurred to the petition on the ground that its allegations were insufficient to state a cause of action for the relief sought. His demurrer was overruled and the exception is to that judgment. *Held:*

1. As shown by the preceding statement of the case, the instrument here involved contained an offer from Pethel to Waters

which obligated the former to sell and convey to the latter the farm in question for $20,000 at any time during the period from January 1, 1961, to March 23, 1961. This was only an offer on Pethel's part to sell and convey the farm to Waters for $20,000 during such period and there is no merit in Waters' contention that an oral election by him to exercise the option to purchase the farm on the terms therein stated and notice of such election to Pethel, without more, operated to convert the option into a contract of sale. Pethel's agreement to sell the farm to Waters during the option period of 1961 was conditioned on payment to him by Waters of $20,000 before the option expired, and payment of that amount to him before it expired, or an actual unconditional tender of that amount to him before the option expired, or that tender of the purchase money before the option expired had been waived by him, was indispensably necessary to convert the offer or option to sell into a contract of purchase and sale. For cases so holding, see *Terry v. Keim,* 122 Ga. 43 (49 SE 736); *Roberts v. Mayer,* 191 Ga. 588 (1) (13 SE2d 382); *Jolly v. Jones,* 201 Ga. 532 (40 SE2d 558); *Burnam v. Wilkerson,* 217 Ga. 657, 661 (124 SE2d 389); and *Cummings v. Johnson,* 218 Ga. 559, 562 (6) (129 SE2d 762). But in this case the allegations of the petition are sufficient to show that Pethel and Waters mutually agreed, as the parties did in *Shepard v. Gettys,* 206 Ga. 392 (57 SE2d 272), that the purchase money, namely $20,000, could and would be paid by Waters to Pethel *after* the option expired on March 23, 1961, when Pethel brought and delivered to him a deed to the farm. This being true, we hold that Pethel waived payment or tender of the purchase money before the option expired and since Waters allegedly made an actual unconditional tender of the purchase money, namely, $20,000 to Pethel during May, 1961, it was then the duty of Pethel to accept it and convey the farm to Waters; and on his refusal to do so, Waters became entitled to specific performance of the contract or to a decree of title to the farm either on payment of the purchase money to Pethel or on payment of it into the registry of the court for his benefit. *Code Ann.* § 20-704 (9); *Ellis v. Bryant,* 120 Ga. 890 (48 SE 352); *Mangum v. Jones,* 205 Ga. 661 (54 SE2d 603); and *Shepard v. Gettys,* supra. The majority ruling in *Broadwell v. Smith,* 152 Ga. 161 (2) (108 SE 609) does not require a ruling different from the one here made.

2. Are the allegations of the petition sufficient to show that Pethel is estopped by his conduct to deny that Waters is entitled to specific performance of the contract or to a decree of title to the farm in question on payment of $20,000 either to him or into the registry of the court for his benefit? We think they are. Before this litigation was instituted but soon after the option expired, Waters allegedly made an actual, unconditional tender of $20,000 for the farm to Pethel by counting out the money to him, a tender which Pethel then refused to accept. The petition also shows that Pethel, after Waters had repeatedly notified him of his election to purchase the farm in 1961 for $20,000 and prior to the expiration date of the option, stated to Waters that he knew and understood that he had elected to exercise his right to purchase the farm in question; that he already had prepared a deed to him for the farm which he would bring and deliver to him after the expiration date of the option and he could pay for the farm at that time; that both parties understood and agreed that their trade would be concluded in that way and at that time; that Pethel knew Waters was making extensive permanent improvements on the farm which involved large expenditures of money during February and March immediately prior to the expiration date of the option and after Pethel had assured him that he would deliver to him a deed to the farm after the expiration date of the option and the purchase money could then be paid; and that Pethel, after the option expired, refused to comply with his agreement to convey the farm to Waters and to accept the $20,000 he had agreed to take for it. See *Studdard v. Hawkins*, 139 Ga. 743 (2) (78 SE 116), and the cases there cited.

3. For the reasons stated in either Division 1 or 2 above, we hold that the court properly overruled Pethel's demurrer to Waters' petition.

*Judgment affirmed. All the Justices concur.*

ARGUED SEPTEMBER 9, 1963—DECIDED SEPTEMBER 18, 1963—

REHEARING DENIED OCTOBER 14 AND NOVEMBER 7, 1963.

*Stow & Andrews*, for plaintiff in error.

*Joseph H. Blackshear, Kenyon, Kenyon & Gunter, A. R. Kenyon*, contra.