60904. BARKLEY-CUPIT ENTERPRISES, INC. v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

McMurray, Presiding Judge.

Barkley-Cupit Enterprises, Inc., d/b/a Rivermont Golf & Country Club ("Barkley-Cupit"), and The Equitable Life Assurance Society of the United States ("Equitable") entered into an agreement (the "Agreement") whereby Equitable leased a golf and country club to Barkley-Cupit for a term of seven years. The Agreement included the following purchase option: " ... Parties agree that Lessee shall have the option to purchase, on April 15, 1980, the golf course, clubhouse and other facilities herein leased, as itemized in Exhibits 'A' and 'B' or as provided for in paragraph 5-N below, for the sum of $1,080,000.00, plus the cost of any improvements contributed by Lessor subsequent to the date hereof (excluding the cost of dam and/or lake, if any); such option shall continue throughout the term of this lease, provided the lease is and has remained in full force and effect and there is no default by Lessee. If Lessee desires to exercise such option, it must notify ... [Lessor] ... in writing on or before April 15, 1979, which is one year before the expiration date of this seven-year lease. In the event of Lessee's exercise of its option to purchase, then the Parties agree to execute all necessary documents including, but without limitation, a special warranty deed at the closing of such sale-purchase. In the event this lease shall be terminated due to a default of Lessee, the option to purchase by Lessee shall become null and void."

On April 5, 1979, Barkley-Cupit forwarded to Equitable notice of its election to exercise the purchase option and agreed "to purchase the Property for the agreed upon purchase price in cash with the closing of said transaction to occur on April 15, 1980."

Shortly thereafter, Barkley-Cupit filed a lawsuit against Equitable in the United States District Court (N. D. Ga.) seeking to recover damages allegedly arising from conduct of Equitable in violation of federal antitrust legislation and from conduct allegedly in breach of the landlord-tenant relationship created by the Agreement. In response Equitable filed a counterclaim praying for damages flowing from Barkley-Cupit's alleged breaches of the Agreement and seeking a declaratory judgment to the effect that Barkley-Cupit would not be entitled to exercise the purchase option

due to its failure to provide Equitable with valid and timely notice of its election to exercise the option and further due to its defaults under the Agreement. On January 31, 1980, the federal court entered an order, filed February 1, 1980, finding Barkley-Cupit's notice of April 5, 1979, to be valid as a matter of law and directing that final judgment be entered in its favor as to that count of Equitable's counterclaim seeking a declaratory judgment to the contrary. An appeal of this ruling is presently pending before the United States Court of Appeals for the Fifth Circuit.

Following a series of correspondence between the parties, the April 15, 1980, closing date designated in the Agreement ultimately passed with neither Barkley-Cupit having tendered the purchase price under the option, nor Equitable having delivered a deed to the subject property. Equitable then filed a summary dispossessory action against Barkley-Cupit in the State Court of Fulton County pursuant to Code §§ 61-301 et seq. Equitable contended that the expiration of the lease agreement with Barkley-Cupit having failed to exercise the purchase option rendered Barkley-Cupit a tenant holding over and entitled Equitable to immediate possession of the property. It is from the state court's order denying Barkley-Cupit's motions to dismiss or stay those proceedings and granting Equitable's motion for summary judgment thereon that this appeal arises.

As a final ripple in this already convoluted dispute, five days after the entry of the state court order here on appeal, the federal court in which the antitrust action is still pending issued, at Barkley-Cupit's urging, a preliminary injunction barring Equitable from taking any further steps to obtain possession of the property pending resolution of the federal court litigation. In arriving at this injunctive decree, the federal court specifically held in part as follows: "After reviewing [the above-quoted purchase option language], the court concludes as a matter of law that, under the plain language of that paragraph, the sole prerequisite to exercise of the purchase option was proper notice on or before April 15, 1979. [Cit.] The court previously has ruled that such notice was given. Having satisfied that prerequisite ... [Barkley-Cupit] ... held an executory contract to purchase the property. Id. Time was not of the essence in closing since the contract did not so state. [Cit.] ... [Barkley-Cupit] ... therefore had a reasonable period in which to close the transaction. Id. ... In the alternative, even if the court were to find that the option required tender or payment in order to be validly exercised, the court considers ... [Equitable's] ... position attacking the validity of the option as a repudiation of that option that made tender futile and thus not required. [Cit.]" *Held:*

1. Barkley-Cupit asserts in its first three enumerations of error that the trial court erred in denying its motions to dismiss or stay and in granting Equitable's motion for summary judgment. In support of these enumerations it is first argued that the pendency of the federal court action largely involving conduct related to the performance of obligations under the subject Agreement was sufficient grounds to dismiss, or at least stay, the state court dispossessory proceedings.

"It is well settled that if two courts of two distinct sovereignties have jurisdiction of the same matter, the filing of suit in one will not furnish a good plea in abatement to the filing of a suit in the other. Generally speaking, the Federal courts and the State courts which have concurrent jurisdiction over civil actions may be considered as courts of separate jurisdictional sovereignties . . . [T]he pendency of a prior suit in a circuit court of the United States is not a bar to a suit in a State court by the same plaintiff against the same defendant for the same cause of action. This is the general rule, but it is not without exception." *Louisville &c. R. Co. v. Newman,* 132 Ga. 523, 526 (2) (64 SE 541) (1909). Barkley-Cupit, however, has failed to cite, and we have been unable to locate, any authority establishing any exception to this general rule of which Barkley-Cupit might avail itself in the instant case. If the general rule operates to permit the litigation of identical causes of action between the same parties in both federal and state forums, certainly such simultaneous proceedings should be permitted upon disparate causes of action as in the present case.

Further, we note that the federal court's order filed February 1, 1980, finding Barkley-Cupit's notice of election to have been valid and timely under the Agreement did not bar the subsequent state court action on *res judicata* or collateral estoppel grounds. The general rule is that "a former judgment binds only as to the facts in issue and events existing at the time of such judgment . . ." *Durham v. Crawford,* 196 Ga. 381, 387 (26 SE2d 778). Subsequent to the federal court order of January 31, 1980, filed February 1, 1980, the specified purchase date passed and the term of the lease expired. As discussed hereinafter, a significant issue exists herein as to whether Barkley-Cupit's tender of the stated purchase price on the designated closing date was an additional prerequisite to the effective exercise of the instant purchase option. As such, the federal court order had no binding effect upon this essential determination in the state court dispossessory proceeding. Accordingly, we find no error or abuse of discretion in the trial court's denial of Barkley-Cupit's motion to dismiss or stay on this ground.

2. In further support of these enumerations, Barkley-Cupit urges that its letter of April 5, 1979, notifying Equitable of its

unconditional election to exercise the purchase option transformed its relationship with Equitable from that of lessor/lessee to that of vendor/purchaser. As such, Barkley-Cupit argues that it presently occupies the subject property as a purchaser in possession, not as a tenant holding over, and that summary dispossessory proceedings consequently do not lie. *Brown v. Persons,* 48 Ga. 60, 61; *Henry v. Perry,* 110 Ga. 630 (36 SE 87). We do not agree.

"The contract set out . . . is a lease with an option to buy at a stipulated price, exercisable within the time specified during the term of the lease, upon the lessee's full performance of the terms of the contract . . . An option to purchase does not make . . . [the lessee] . . . a purchaser until he has fully complied with the terms of the option." *Spell v. Ward,* 54 Ga. App. 273, 275 (187 SE2d 720). See also, *Jarman v. Westbrook,* 134 Ga. 19 (67 SE 403). Thus, the question here presented for our determination is one of contractual interpretation. What actions are envisioned under the Agreement as constituting full compliance with the terms of the instant option so as to transform Barkley-Cupit from a lessee into a purchaser?

"The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." Code § 20-702. We therefore begin by noting that the option paragraph of the instant Agreement designates two distinct dates: (i) Barkley-Cupit is given an option to purchase the subject property on *April 15, 1980,* and (ii) if Barkley-Cupit intends to exercise the purchase option, it must notify Equitable of that election no later than *April 15, 1979.*[1]

"Time is not generally of the essence of a contract of sale, but by express stipulation or agreement it may become so. [Cits.] The rule with reference to options is just the reverse, and an option is peculiarly an agreement of which time is of the essence. [Cits.]" *Gulf Oil Corp. v. Willcoxon,* 211 Ga. 462, 467 (3) (86 SE2d 507). Thus, because of the singular one-sidedness of an option contract in creating, for a stated duration, an irrevocable offer of the optionor, the law requires that the optionee perform all of its obligations under that contract with particular timeliness. As noted above, the instant option sets forth two distinct time requirements. Not only must Barkley-Cupit/optionee notify Equitable/optionor of its election by April 15, 1979, but Barkley-Cupit must also purchase the property

---

[1] No issue is raised on this appeal, as to the validity or timeliness of Barkley-Cupit's notice of election.

"on April 15, 1980."

Moreover, Barkley-Cupit's own conduct reflects that it considered itself contractually bound to purchase the property on the stated date. In its letter of April 5, 1979, notifying Equitable of its election to exercise the option and again in correspondence with Equitable one day prior to the designated closing date, Barkley-Cupit notes that the Agreement required a purchase of the property on April 15, 1980. "The construction placed upon a covenant in a lease, as in case of all contracts, by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them." *Asa G. Candler, Inc. v. Ga. Theater Co.,* 148 Ga. 188, 192 (5) (96 SE 226). Accordingly, we find that Barkley-Cupit's purchase of the subject property on April 15, 1980, was essential to full compliance with the terms of the instant option. To hold otherwise would deny any significance to the parties' designation of a specific date for purchase in addition to a distinct date for notice of election.

Having held that purchase on April 15, 1980, was essential to full compliance with the terms of the option, it follows that payment of the purchase price to Equitable on April 15, 1980, or an unconditional tender of that amount to Equitable on the specified date or a showing that tender of the purchase money on that date had been waived by Equitable was "indispensably necessary to convert the offer or option to sell into a contract of purchase and sale." *Pethel v. Waters,* 219 Ga. 376, 379 (133 SE2d 334). As earlier noted, it is undisputed that Barkley-Cupit has at no time tendered any purchase money to Equitable in pursuance of the option Agreement. Barkley-Cupit does contend, however, that certain conduct of Equitable during the term of the lease waived Equitable's right to a tender of the purchase price on the stated date and excused Barkley-Cupit's timely performance in that regard. Thus, "[a]n issue of fact remains as to whether or not timely performance of this contract was waived by appellee [Equitable]." *Edwards v. McTyre,* 246 Ga. 302, 303 (3) (271 SE2d 205). It was therefore error to grant Equitable's motion for summary judgment. Accordingly, we reverse the trial court's order and remand for further proceedings as to the issue of waiver. If it be found that timely tender of purchase price has been waived by Equitable then Barkley-Cupit, having complied as fully as possible with the terms of the option, is a purchaser in possession and summary dispossessory proceedings would not properly lie. If, however, such tender has not been waived by Equitable's conduct then Barkley-Cupit has failed to comply with the terms of the instant option and is a tenant holding over.

Barkley-Cupit cites language in *Walker v. Edmundson,* 111 Ga.

454, 456 (36 SE 800); *Snead v. Wood,* 24 Ga. App. 210 (1), 213-216 (100 SE 714); and *McLean v. Neal,* 29 Ga. App. 9 (1) (113 SE 63), in support of its argument that its unconditional notice of election to exercise the option over a year prior to the designated closing date was alone sufficient to transform it from lessee to purchaser. Each of these cases is to be distinguished from the instant case, however, in that it does not appear that any of the purchase options there under consideration specified two distinct dates, one for notice and one for purchase, so as to reflect an intention of the parties that purchase (including a tender of purchase money or the waiver thereof) as well as notice of election was necessary to exercise the respective options.

Each of the above-cited cases is distinguished on other grounds as well. In *Walker v. Edmundson,* 111 Ga. 454, supra, unlike the present case, the lessee/optionee specifically alleged that he had tendered "the full amount of the purchase-money agreed upon." The action in *Snead v. Wood,* 24 Ga. App. 210, supra, was brought to determine the rights of a real estate broker to receive a commission from a property owner, and not to delineate the rights between a lessor/optionor and a lessee/optionee. Moreover, it should be noted that although this court held that under the facts of that case a timely unconditional notice of election was sufficient to constitute an exercise of the option so as to entitle the broker to his commission, it was also recognized that an option contract can provide that "in addition to the communication of the bare fact that the optionee has elected to purchase, a part or the whole of the purchase-money must be paid as a condition precedent to the exercise of the option privilege. In such a case the mere notice of an election would be clearly insufficient." *Snead v. Wood,* 24 Ga. App. 210, supra, at p. 213. Lastly, in *McLean v. Neal,* 29 Ga. App. 9, 10 (2), supra, it was determined that the terms of the contract therein were immaterial "since the lessor [had] refused to carry out the contract of purchase," that is, facts sufficient to constitute a waiver of timely tender had previously been established. As indicated above, there has as yet been no factual determination as to waiver herein, and we remand for further proceedings regarding that issue.

To provide some guidance in this inquiry into waiver, we note that Equitable's conduct in filing and prosecuting counterclaims in the federal court action contesting Barkley-Cupit's right to exercise the instant purchase option does not alone constitute a waiver of Equitable's right to a timely tender of the purchase price. The counterclaims were compulsory in nature (Federal Rules of Civil Procedure, Rule 13 (a), 28 USCA); Equitable should not be forced to choose between a waiver of its right to assert such claims if it does not file the counterclaim, and a waiver of its right to a timely tender if it

does file the counterclaim. If it be found, however, that prior to April 15, 1980, whether in the course of prosecuting these counterclaims or not, Equitable not only contested Barkley-Cupit's right to exercise the option, but also manifested a clear intention not to accept tender or not to perform its contractual obligations even if Barkley-Cupit should make a timely tender of the purchase price, then a waiver has in fact occurred. See *Miller v. Watson,* 139 Ga. 29 (2) (76 SE 585).

3. Lastly, Barkley-Cupit enumerates as error the admission of certain supplemental evidence into the record on the grounds that Equitable's filing of such evidence two days before the hearing on its motion for summary judgment was not timely. Barkley-Cupit's sole argument in this regard is that since such an untimely filing should have postponed the hearing until a later date, Equitable's motion was not yet ripe for adjudication, and the judgment rendered thereon was therefore void. In view of our holding in Division 2 remanding this case for a full evidentiary hearing regarding waiver, and in view of the fact that we were able to arrive at our determination in Division 2 without resorting to the supplemental evidence of which Barkley-Cupit here complains, any error there may have been, in admitting the evidence two days before the hearing, has been rendered harmless.

*Judgment reversed and remanded for further proceedings consistent with this opinion. Banke and Pope, JJ., concur.*

DECIDED JANUARY 14, 1981.

*Emmet J. Bondurant, H. Lamar Mixson,* for appellant.
*David A. Handley, James C. Huckaby, Jr.,* for appellee.