David DYRDAL, Appellant,

v.

GOLDEN NUGGETS, INC.,
Respondent,

Ron Micke, et al., Respondents.

No. A03–214.

Supreme Court of Minnesota.

Dec. 16, 2004.

Garth Gerald Gavenda, Christopher Kent Wachtler, Collins Buckley Sauntry & Haugh, P.L.L.P., St. Paul, MN, for Appellant David Dyrdal.

Boris Parker, Patrick Michael Anderson, Floyd E. Siefferman, Jr., Saliterman & Siefferman, P.C., Minneapolis, MN, for Respondent Golden Nuggets, Inc.

Delray Lynn Sparby, Thief River Falls, MN, for Respondent Ron Micke, et al.

## OPINION

ANDERSON, RUSSELL A., Justice.

In this case we affirm summary judgment dismissing a lessee's claim that he did not receive notice of sale sufficient to exercise a contractual right of first refusal to purchase the land he was leasing. We hold that when, as in this case, the lease provides the lessee with right of first refusal but is otherwise silent regarding the right, the lessor need only provide reasonable notice of the essential terms of an offer of sale to trigger the lessee's obligation to timely exercise his right of first refusal. We acknowledge that upon receiving notice of sale, the lessee may need to clarify or investigate uncertainties or ambiguities in essential sale terms before exercising the lessee's first refusal right, but we also hold that such inquiry, and

lessor's response thereto, must be reasonable, timely and in good faith.

In 1988, appellant David Dyrdal (Dyrdal) began leasing 630 acres of land in the Red River Valley from respondent Golden Nuggets, Inc. (Golden Nuggets). In 1999, Golden Nuggets' farm manager, who was also its real estate agent, renegotiated the lease with Donovan Dyrdal (Donovan), Dyrdal's brother. Donovan had power of attorney for Dyrdal and acted in Dyrdal's behalf throughout this matter. Prior leases gave Dyrdal 45 days from offer of sale to accept or reject the offer but the 1999 lease provided only that Dyrdal "has first right of refusal to purchase land if it were to be sold."

In early August 2001, Golden Nuggets' farm manager orally notified Dyrdal of an offer to purchase the land. By letter of August 8, 2001, Golden Nuggets' attorney in Nebraska notified Dyrdal that his right of first refusal had terminated on August 6 at 8:15 a.m. and that Golden Nuggets had a buyer who would pay $252,000.[1] Dyrdal replied by letter of August 15, asserting that he had 45 days to exercise his right, relying apparently upon the terms of the prior lease. On August 16, Golden Nuggets' Nebraska attorney responded by fax to Dyrdal's letter, indicating that he was enclosing copies of a purchase agreement, and stating, "I find nothing in the present lease giving you 45 days to exercise your option of right of first refusal. The written lease controls the terms * * *." Dyrdal replied on August 16, indicating that he had received faxed transmissions that were not legible and requesting legible copies of the transmissions. Dyrdal wrote, "Upon receipt of that information the 45

1. Golden Nuggets contends that the price included in the August 8, 2001 letter was a typographical error. This is the only time that a price other than $265,000 was provided, although Dyrdal alleges, and Golden Nuggets denies, that Dyrdal had an oral contract with one of Golden Nuggets' owners to purchase the land for $252,000.

days I have to exercise my rights will commence."

It appears from the record that on August 13, 2001 Dyrdal received by fax transmission a partially illegible copy of a purchase agreement dated August 9, 2001, providing for sale of the land by Golden Nuggets to respondent Micke Pokel Farms. Although partially illegible, the faxed copy of the agreement clearly provides for a $265,000 cash sale.

On August 21, Dyrdal received a fully typed but unsigned version of the August 9 purchase agreement. When compared with the partially illegible copy received earlier, the unsigned typed version discloses the identical standard form agreement and identical agreement terms. Both versions clearly indicate a sale price of $265,000, a down payment of $15,000, and a closing date on or before February 5, 2002. During the months that followed, Dyrdal made no attempt to exercise his right of first refusal and had no further communications with Golden Nuggets until, by complaint dated December 19, 2001, Dyrdal sued Golden Nuggets and Micke Pokel Farms and one of its general partners, Ron Micke, for breach of the lease. Dyrdal alleged that the land was not "farmable" because Golden Nuggets had failed to repair damage to ditch walls and embankments. Dyrdal also alleged that he had been denied the right of first refusal to purchase the land. Dyrdal filed a notice of lis pendens with the Marshall County Recorder. Golden Nuggets denied the allegations and counterclaimed, alleging that Dyrdal had disrupted the pending sale by filing the notice of lis pendens and that the disruption would result in loss of a " § 1031 exchange" tax benefit.[2]

Golden Nuggets and Micke Pokel Farms filed motions for summary judgment dismissing Dyrdal's complaint. At a prehearing conference on the motions, the district court denied Dyrdal's discovery request for information about other land purchases or attempted land purchases by Micke Pokel Farms. Dyrdal asserted, without factual support, that Micke Pokel Farms had conspired to buy other lands that Dyrdal or his family owned or were farming. The district court subsequently granted the motions for summary judgment dismissing Dyrdal's complaint. The court concluded Golden Nuggets had no duty under the lease to provide "farmable" land, and that Dyrdal had been afforded his right of first refusal but had failed to exercise it. Concluding that Dyrdal had initiated the lawsuit in bad faith based only upon "suspicions" and "personal opinion," the district court awarded costs, fees and attorney fees to Golden Nuggets and Micke Pokel Farms. The court of appeals reversed the award of bad faith attorney fees but otherwise affirmed the district court, also concluding that Dyrdal had been afforded this right of first refusal but had failed to exercise it. *Dyrdal v. Golden Nuggets, Inc.*, 672 N.W.2d 578, 586, 589 (Minn.App.2003). We received cross-petitions for review but granted only Dyrdal's petition seeking review of summary judgment dismissing his claim that he was denied right of first refusal. We affirm.

I.

On appeal from summary judgment, we consider whether there are genuine issues of material fact, and whether either party is entitled to judgment as a matter of law. *Christensen v. Milbank*

---

**2.** A "1031 exchange" allows for the equity received from a sale of investment property to be reinvested into "like kind" property of equal or greater value without payment of capital gains tax. *See* 26 U.S.C. § 1031 (2000). Golden Nuggets intended to reinvest the sale proceeds in land in Nebraska, thereby avoiding capital gains taxes.

*Ins. Co.*, 658 N.W.2d 580, 584 (Minn.2003). The party opposing summary judgment may not establish genuine issues of material fact by relying upon unverified and conclusory allegations, or postulated evidence that might be developed at trial, or metaphysical doubt about the facts. *See Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn.2001); *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn.1997).

*Genuine issues of material fact*

■ We turn to the question of whether there are genuine issues of material fact that preclude summary judgment. Under power of attorney from Dyrdal, his brother, Donovan, negotiated and signed the 1999 lease and also acted on Dyrdal's behalf throughout this matter. Donovan admitted at his deposition that he knew from copies of the purchase agreements he received in August 2001 that the sale price for the land was $265,000, that the down payment was $15,000, and that closing was to be on or before February 5, 2002. The only term that he did not understand in the purchase agreement concerned the land exchange. Yet, in the district court and the court of appeals, and now in this court, Dyrdal claims that there are genuine issues of material fact regarding the terms of the purchase agreement. He claims that Golden Nuggets agreed orally to sell the land to him before agreeing to sell the land to Micke Pokel Farms. Golden Nuggets denies that there was such an agreement and, in any event, an oral agreement to sell land is not enforceable under the statute of frauds. *See* Minn. Stat. § 513.05 (2002). Dyrdal next claims that he "heard" of a "land exchange" that

might have altered the sale terms in the purchase agreement, but he made no inquiry concerning a "land exchange." The "land exchange" would not affect sale terms, however, because it concerned a "1031 land exchange" allowing Golden Nuggets to reinvest sale proceeds to avoid capital gains tax. *See* 26 U.S.C. 1031 (2000).

Dyrdal also claims that he was misinformed as to the sale price when Golden Nuggets' attorney first wrote advising him of a sale price of $252,000; yet, as already noted, his brother, Donovan, who acted for him with power of attorney throughout this transaction, admitted that he knew in August 2001 that the sale price for the land was $265,000, that the down payment was $15,000, and that closing was to occur on or before February 5, 2002. Dyrdal also asserts that he had doubts concerning terms of the sale because Golden Nuggets' farm manager and real estate agent had a history of engaging in "questionable business practices."[3] Such general and conclusory allegations fail to raise fact issues that would defeat summary judgment in this case. *See Funchess*, 632 N.W.2d at 672. Finally, Dyrdal's reliance upon "general comments around town" that the sale was proceeding on terms other than those stated in the purchase agreement is but metaphysical doubt that will not defeat summary judgment. *See DLH, Inc.*, 566 N.W.2d at 71. We conclude that Dyrdal has failed to establish genuine issues of material fact concerning the essential terms of the purchase agreement. Dyrdal received a legible copy of the purchase agreement by August 21, 2001, and he

---

**3.** With regard to an unrelated sale in which Dyrdal's nephew, Greg Dyrdal, abandoned his claim that he was denied his right of first refusal, Dyrdal asserts that Golden Nuggets' farm manager may have misrepresented the sale terms by guaranteeing a third-party buyer a renter. Dyrdal also claims that Golden Nuggets' farm manager acquired and used confidential information about Dyrdal's farming operation, overstating disaster payments in reports to the federal government.

made no inquiry regarding the sale terms during the 45 days that he insists he had to exercise his first refusal right.

*Discovery violation*

■ Dyrdal also argues that the district court abused its discretion when it denied his discovery request for information about other land purchases or attempted land purchases by Micke Pokel Farms. Dyrdal asserts, without factual support, that Micke Pokel Farms was conspiring to buy other land that he or his family owned or were farming. We conclude that the district court did not abuse its discretion when it denied Dyrdal's discovery request and agree with the district court that the discovery of other land purchases or attempted land purchases by Micke Pokel Farms is not relevant to this case, nor would it lead to the discovery of admissible evidence regarding this case. *See Shetka v. Kueppers, Kueppers, Von Feldt & Salmen*, 454 N.W.2d 916, 919 (Minn.1990) ("information subject to discovery must, at least, be likely to lead to relevant admissible evidence"); *Erickson v. MacArthur*, 414 N.W.2d 406, 407 (Minn.1987) (stating that absent a clear abuse of discretion, a district court's decision regarding discovery requests in civil actions will not be reversed on appeal).

## II.

■ We turn next to the question of whether Golden Nuggets and Micke Pokel Farms are entitled to summary judgment as a matter of law. We have long recognized the right of parties to freely contract, and will enforce legal rights according to contract terms. *See Rose Revocable Trust v. Eppich*, 640 N.W.2d 601, 610 (Minn.2002); *James Quirk Milling Co. v. Minneapolis & St. Louis R. Co.*, 98 Minn. 22, 23, 107 N.W. 742, 742 (1906). Here, the lease clearly provided Dyrdal with the right of first refusal to purchase the land if

it were sold, but the lease contained no provision regarding notice of sale by the lessor nor any provision for response to such notice by the lessee.

■ The right of first refusal is not an option to purchase but it "limits the right of the owner to dispose freely of its property by compelling the owner to offer it first to the party who has the first right to buy." 25 Richard A. Lord, *Williston on Contracts* § 67:85 (4th ed.2002). The right ripens into an option when the owner receives a bona fide third party offer and notifies the holder of the right. *Id.; Park–Lake Car Wash, Inc. v. Springer*, 352 N.W.2d 409, 411 (Minn.1984).

Dyrdal argues that the notice of sale must be made with "exactitude" as to *all* sale terms, citing our decision in *Minar v. Skoog*, 235 Minn. 262, 50 N.W.2d 300 (1951). In *Minar*, the lessee's right of first refusal was triggered by notice from the lessor of a third party's offer to purchase the leased property. The lessee responded to the notice by accepting the offer to purchase, but also by requiring that the lessor agree to additional sale terms. We held that the lessee's response to the offer failed because it did not match with "exactitude" the offer of sale contained in the notice. *Id.* at 266, 50 N.W.2d at 302. *Minar* reflects the standard for evaluating offer and acceptance, but does not address the question before us as to the sufficiency of the notice required to trigger the right of first refusal.

■ We have not previously considered what constitutes sufficient notice to trigger the right of first refusal. As a matter of first impression, we conclude, as did the court of appeals, that absent express agreement between the parties regarding the nature of notice activating a right of first refusal and its sufficiency, the lessor need provide only reasonable notice

of the essential terms of an offer of sale to trigger the lessee's obligation to timely respond. *See John D. Stump & Assocs., Inc. v. Cunningham Mem'l Park, Inc.*, 187 W.Va. 438, 419 S.E.2d 699, 706 (1992). When, as here, the contract provides no deadline for accepting or rejecting the offer of sale, acceptance must be within a reasonable time. *Stone v. Harmon*, 31 Minn. 512, 515, 19 N.W. 88, 89 (1884). We acknowledge that upon receiving notice, a lessee may have to clarify or investigate uncertainties and ambiguities of essential terms, but we also conclude that such an inquiry must be done within a reasonable time and that both the lessee, in making inquiry, and the lessor, in responding to the inquiry, must act timely, reasonably and in good faith. *See Stump*, 419 S.E.2d at 706; *Koch Indus., Inc. v. Sun Co., Inc.*, 918 F.2d 1203, 1212 n. 6 (5th Cir.1990); *Barkley–Cupit Enters., Inc. v. Equitable Life Assurance Soc'y of the U.S.*, 157 Ga. App. 138, 276 S.E.2d 650, 654 (1981); *see also* 25 Lord, *supra*, § 67:85 at 503 (discussing example of "bad faith" attempt by owner to deprive lessee of right of first refusal).

 Applying these standards to this case, we conclude that requiring Dyrdal to respond within 48 hours to oral notice of sale was not reasonable, but by asserting his right and by requesting and receiving legible copies of the purchase agreement, Dyrdal received reasonable notice of the essential sale terms. We also conclude that by failing to inquire further concerning the sale terms, and by failing to accept or reject the sale terms within the 45 days he maintains that he had to accept or reject the offer, Dyrdal forfeited his right of first refusal and summary judgment dismissing his claim was properly granted.[4]

Affirmed.

ANDERSON, G. BARRY, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

4. In our discretion, we decline to address Dyrdal's argument, first raised before this court, that Golden Nuggets anticipatorily breached the lease. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (stating that we generally review only issues presented to and considered by the trial court); *see also* Minn. R. Civ.App. P. 103.04 (giving court discretion to address an issue not determined by the district court). In passing, we note that anticipatory breach is the "unconditional repudiation of a contract, either by words or acts, which is communicated to the other party prior to the time fixed for his performance[.]" *In re Haugen*, 278 N.W.2d 75, 79 n. 6 (Minn. 1979). Here, Dyrdal asserted that he had 45 days to exercise his right and that Golden Nuggets responded to his request for a legible copy of the purchase agreement. In our view, this does not constitute an "unconditional repudiation" communicated by Golden Nuggets before the time fixed for performance of the contract.